725 So.2d 32 (1998)
Raquel Andrea JACKSON, et al.
v.
David BELFIELD, III.
No. 98-CA-0440.
Court of Appeal of Louisiana, Fourth Circuit.
November 25, 1998.
Rehearing Denied January 15, 1999.
*33 Elizabeth Rue Brennan, Bridgeman Law Firm, New Orleans, and J. Robert Ates, A Professional Law Corporation, Destrehan, for Plaintiff/Appellant, Raquel Jackson, et al.
Before SCHOTT, C.J., and BYRNES and MURRAY, JJ.
MURRAY, Judge.
Raquel Andrea Jackson appeals a judgment setting the amount of child support to be paid by David Belfield, III, for the support of their minor child, Kaitlyn Marie, and awarding fees and costs in connection with establishing paternity. For the following reasons, we amend in part, reverse in part and remand to the trial court for further consideration.

FACTS:
Kaitlyn Marie Jackson was born on May 9, 1985. On July 10, 1995, her mother, Raquel Andrea Jackson, filed a Petition to Establish Filiation, naming David Belfield, III., as the father of the child, and requesting that the court appoint an expert to do blood testing. In the event the blood tests proved Mr. Belfield to be the biological father of Kaitlyn, Ms. Jackson requested that he be ordered to pay child support, that the child's last name be changed to Belfield, and that a new birth certificate be issued to reflect the requested changes. A hearing was set for September 25, 1995. Mr. Belfield did not appear for the hearing, however, he was represented by counsel. A judgment was rendered ordering Mr. Belfield to either acknowledge the child by Friday, September 29, or submit to blood testing prior to October 31, 1995. Mr. Belfield neither acknowledged the child, nor appeared for blood testing as ordered.
Pursuant to a rule for contempt filed on behalf of Ms. Jackson, Mr. Belfield again was ordered to appear for blood testing no later than February 21, 1996. The blood tests indicated that there was a 99.99% probability that Mr. Belfield was Kaitlyn's biological father. Ms. Jackson again requested a hearing to have Mr. Belfield show cause why he should not be declared the biological father, why child support should not be set and made retroactive to the date the petition for filiation was filed, why Kaitlyn's last name should not be changed and a new birth certificate issued, and why he should not be ordered to pay all attorney's fees and costs incurred in seeking to establish paternity. *34 The hearing was set for August 27, 1996, over Ms. Jackson's objection, Mr. Belfield was granted a continuance until March 17, 1997.
A Judgment of Filiation finally was signed April 9, 1997. However, in a separate order signed April 11, the issues of changing the child's last name and issuing a new birth certificate were continued without date. An interim order of custody was rendered granting joint custody, with Mr. Belfield having the right to supervised visitation. A hearing was set for May 29, 1997, at which time Mr. Belfield was to show cause why sole custody should not be granted to Ms. Jackson. An interim order of support also was issued for Mr. Belfield to pay $487.00 in child support. He also was ordered to determine the cost of placing Kaitlyn on his group health insurance plan. The issues of permanent child support and whether such support should be made retroactive were continued to May 29, 1997. Last, a hearing was set for June 13, 1997, on the issue of attorney's fees and costs. Both sides were ordered to submit memoranda on the applicable law, with supporting documents.
On May 27, 1997, Mr. Belfield moved to have the issues of child support and attorney's fees referred to mediation. Over Ms. Jackson's objections, on May 30, the court ordered the mediation. Curiously, also on May 30, the court signed an order setting all issues, including child support and attorney's fees, for trial on June 13, 1997. However, on that date, a status conference was held in lieu of the scheduled hearing. On July 11, presumably as a result of the status conference, the court issued another order, in which it found Mr. Belfield to be in arrears on his interim support payments, terminated his visitation rights, and ordered him to immediately apply for and maintain health insurance on his daughter. The court also again ordered mediation to be completed no later than August 10, 1997.[1] A new trial date was set for August 18.
On September 10, 1997, a joint motion was filed by both of Mr. Belfield's attorneys requesting that they be allowed to withdraw because of their client's Mr. Belfield's lack of cooperation, and failure to provide information to them necessary to defend or represent him.
On September 15, 1997[2], Mr. Belfield represented himself in the trial of all issues still pending, and on October 14, 1997, the court signed the judgment from which Ms. Jackson appeals.

DISCUSSION:
On appeal Ms. Jackson makes two assignments of error: 1) the district court erred in its calculation of child support, and 2) the district court erred in not awarding attorney's fees and costs actually incurred.

A. Child Support:
Ms. Jackson assigns as error the trial court's deviation from the child support guidelines in calculating Mr. Belfield's support obligation. Specifically she alleges that the court erred in: (1) calculating Mr. Belfield's income; (2) calculating her income; (3) failing to add the cost of child care to the basic support obligation; (4) failing to add the actual cost of health insurance to the basic support obligation; (5) considering Mr. Belfield's support of another child; (6) failing to order that Mr. Belfield pay future child support through an income assignment; and (7) failing to order Mr. Belfield to pay his share of Kaitlyn's extraordinary medical expenses.

1. Calculation of Mr. Belfield's Income:

The trial court calculated the basic support obligation upon a determination that Mr. Belfield's gross annual income is $40,000, based on W-2 forms for the years 1993, 1995, and 1996 that were obtained in discovery from Mr. Belfield's employer.[3] Ms. Jackson argues that this was error because the evidence *35 established many "suspicious circumstances" that suggest that Mr. Belfield has income in excess of his wages from the law firm. These circumstances include his life style, his maintaining a professional law corporation, his failure to file income returns or to produce copies of returns prepared on his behalf by the Internal Revenue Service, and his failure to maintain any bank accounts.
Alternatively, Ms. Jackson argues that the court erred in not finding that Mr. Belfield was voluntarily underemployed. She suggests that, because of his education, experience, and connections in the community, Mr. Belfield is capable of earning $125.00 per hour. Using that hourly rate as his earning capacity, Ms. Jackson contends that he is working only six hours per week, or parttime. She argues that Mr. Belfield has an earning potential of $100,000 to $260,000 per year.
Both Mr. Belfield and Ms. Jackson were required to provide to the court a verified income statement showing their gross income and adjusted gross income as well as documentation of past and current earnings. Such documentation shall include a copy of the party's most recent federal tax return. La.Rev.Stat. 9:315.2. Neither Mr. Belfield nor Ms. Jackson complied with this statutory requirement.
Mr. Belfield testified that his sole source of income at the time of trial was his salary from his law firm. The W-2 statements that were produced in discovery showed that he earned $39,291.56 in 1993, $42,500.08 in 1995, and $40,000 in 1996. A pay stub for the period ending June 30, 1997, shows his bi-monthly gross earnings as $1666.67. He further testified that he had not filed federal income tax returns for 1994, 1995 or 1996, although the IRS had prepared a return for 1993. Mr. Belfield refused to respond to discovery or answer questions regarding the income attributed to him by the IRS for that year. He testified that he was admitted to practice law in 1989, that he had been with the same law firm since his admission, that he had received no raises during his employment, but had received a $1000 bonus on one occasion. He also testified that he had formed a professional law corporation, but denied that it was active. When impeached with records from the Secretary of State showing that an annual reports had been filed for the corporation for the period ending August 6, 1996, he continued to maintain that the corporation produced no income. Although he had acknowledged participating in various social organizations, gambling and taking an expensive vacation, he stated that he was able to do so because of the generosity of his friends.
We agree with Ms. Jackson that these circumstances certainly cast doubt on the conclusion that Mr. Belfield's total gross annual income is $40,000. His lack of cooperation and failure to comply with the statute made it impossible for the trial court to establish his income with any degree of confidence. Such obstructiveness must not be rewarded; it should neither be allowed to inure to him nor to disadvantage his daughter.
The only documentation of Mr. Belfield's income indicates that he earns $40,000 annually. Based on this annual income, assuming he is working forty hours per week, and fifty weeks per year, his hourly rate is $20.00. It is patently obvious that any lawyer with ten years experience is able to command a higher hourly rate. We find, therefore, that David Belfield is underemployed. Consequently, his potential income should be used in calculating the basic support obligation, unless we find that the underemployment results through no fault of his own. La.Rev. Stat. 9:315(6)(b). Mr. Belfield offered no reason as to why he works at such an inadequate rate. Nor did he testify as to any efforts he was making to increase his income to a level commensurate with his education and experience. We recognize that the trial court has wide discretion in judging the credibility of witnesses, and its factual determinations, including whether someone is voluntarily underemployed, will not be disturbed absent manifest error. See Koch v. Koch, 97-1600 (La.App. 4 Cir. 4/22/98), 714 So.2d 63. We find, however, that the trial court erred in failing to find that Mr. Belfield was voluntarily underemployed.
Because we find that Mr. Belfield is voluntarily underemployed, we are instructed by *36 statute to calculate child support based on a determination of his income earning potential. See La.Rev.Stat. 9:315.9. Unfortunately, the record before us does not allow us to make that determination. Despite Ms. Jackson's attempts to verify Mr. Belfield's income through numerous lengthy and detailed discovery requests and numerous court orders for him to comply with the requests, as of the time of trial, the only verification of income was the aforementioned W-2 forms obtained from his employer. Mr. Belfield testified that he has not filed income tax returns in several years because of an on-going dispute with the Internal Revenue Service over gambling income.
Louisiana Revised Statute 9:315.2 A requires each party in a child support proceeding to provide to the court a "verified income statement showing gross income and adjusted gross income, together with documentation of current and past earnings." While the statute suggests certain suitable forms of documentation, it requires that a copy of the party's most recent federal tax return be provided.[4] Thus, according to the statute, Mr. Belfield should have provided this proof of income to the court regardless of any discovery requests. In State in the Interest of Joseph, 97-0780, p. 4 (La.App. 4 Cir. 12/23/97), 705 So.2d 776, 779, this Court stated:
Clearly, the language of the governing statutes [La.Rev.Stat. 9:315, et seq.] indicates that the legislature did not intend for child support obligations to be arbitrarily established ... by the parties. Instead it is the trial court's responsibility to calculate the basic child support obligation. LSA-R.S. 9:315.2(D). In establishing or modifying a basic child support obligation it is incumbent upon the trial court to examine the income and financial status of both parties. In order to do so the trial court must examine the income statements of both parties.
It was error for the trial court to rely solely on Mr. Belfield's W-2 forms provided by his employer to determine his income for child support purposes. The fact that Mr. Belfield claims to have a running battle with the IRS does not relieve him of his legal duty to comply with the requirements of the child support statutes. We, therefore, remand to the district court for a determination of Mr. Belfield's income earning potential.

2. Calculation of Ms. Jackson's Income:
Ms. Jackson also asserts that the trial court erred in its determination of her gross income. Ms. Jackson testified that she worked approximately fifteen hours per week at $7.15 per hour, the post trial brief submitted to the trial court stated her hourly wage as $17.50, and on appeal the correct hourly wage is said to be $7.50. Because of these discrepancies it is impossible to determine Ms. Jackson's correct hourly wage. In addition, she, like Mr. Belfield, has a statutory obligation to provide proper documentation in order to prove her income. We, therefore, remand to the trial court for Ms. Jackson to offer proper evidence of her income, and for a recalculation of her gross monthly income based on that evidence.

3. Child Care Costs:
Ms. Jackson argues that the trial court erred in not including the cost of child care in its calculations for child support. Louisiana Revised Statute 9:315(7) defines "net child care costs" as "the reasonable costs of care incurred by a party due to employment or job search...." (emphasis added) Ms. Jackson testified that she is a full-time student who works part-time. It is unclear if any of her child care expenses are incurred due to her work schedule. As such, we cannot make a determination as to whether she is entitled to child care expenses under the statute. Further, the record contains no proof of what she actually pays for day care. In her brief, she indicates that she has an expense of $55 per week, but the record contains nothing to support this contention. Thus, Ms. Jackson must offer proof that her child care expenses are work-related, and, if so, she must offer evidence of the *37 cost of the child care if it is to be used in the calculation of child support.

4. Cost of Health Insurance:
Ms. Jackson also assigns as error the trial court's ruling in connection with health insurance for Kaitlyn. In its Judgment, the trial court stated that the health insurance premium for coverage of Kaitlyn is $100 per month. This Court has been unable to locate any evidence whatsoever offered by either side concerning the cost of health care. We thus remand for a proper evidentiary finding of the cost. Also, contrary to the trial court's application of the guidelines, Mr. Belfield should not be ordered to pay a percentage of the premium. Louisiana Revised Statute 9:315.4 mandates that the cost of insurance shall be added to the basic child support obligation. The cost should not be calculated separately on a percentage basis and then added to the total obligation.

5. Mr. Belfield's Support of his Son:
Ms. Jackson contends that the trial court erred in accepting Mr. Belfield's testimony that he supports a son from another relationship. In Guillot v. Munn, 96-0620 (La.6/21/96), 676 So.2d 86, the Supreme Court, citing La.Rev.Stat. 9:315.1(C)(2), explained that a trial court may consider the legal obligation of a party to support dependents who are not the subject of the instant matter, and who are in that party's household. However, such a deviation must be supported by an evidentiary basis. Also see Authement v. Authement, 96-1289, p. 14 (La. App. 1 Cir. 5/9/97), 694 So.2d 1129, 1137.
Mr. Belfield testified that his son lives with him "off and on," and that he is totally responsible for his support. However, he offered no proof in support of this testimony. Instead, he suggested that a consent judgment to that effect could be found "somewhere" in the records of Civil District Court. This was not a sufficient evidentiary basis to establish this as a factor to be taken into consideration in determining Mr. Belfield's support obligation to his daughter. In addition, the calculation of this obligation using the guidelines for two children was error. If, on remand, Mr. Belfield is able to establish a pre-existing child support obligation, that amount should be substracted from his monthly gross income. Mr. Belfield's adjusted monthly gross income would then be used to calculate support for Kaitlyn using the guidelines for one child. See Guillot v. Munn, supra.

6. Income Assignment:
Ms. Jackson argues that the trial court was compelled to order Mr. Belfield to pay future child support through an income assignment. La. Rev.Stat. 9:303 A provides that "[i]n all new child support orders after January 1, 1994, that are not being enforced by the Department of Social Services, the court shall include as part of the order an immediate income assignment unless there is a written agreement between the parties or the court finds good cause not to require an immediate income assignment." Section B of La.Rev.Stat. 9:303 B(2) provides that good cause exists upon a showing by the respondent that:
The respondent is not likely to become delinquent in the future.
Any other sufficient evidence which, in the court's discretion, constitutes good cause.
The statute contains mandatory language that an income assignment shall issue unless the respondent shows good cause why it should not. The record contains no evidence that Mr. Belfield provided good cause for the trial court not to issue an income assignment. Therefore, the trial court should have ordered that an income assignment issue for all future child support payments. Carner v. Carner, 97-128, pp. 3-4 (La.App. 3 Cir. 6/18/97), 698 So.2d 34, 35-36.

7. Extraordinary Medical Expenses:
In her final assignment related to the calculation of Mr. Belfield's support obligation, Ms. Jackson contends that the trial court erred in not ordering Mr. Belfield to pay his percentage of Kaitlyn's uninsured extraordinary medical expenses. La. Rev. Stat. 9:315.5 provides that the parties may agree or the court may order that "extraordinary medical expenses incurred on behalf of *38 the child shall be added to the basic child support obligation." Again, although there was testimony from Ms. Jackson that Kaitlyn has been diagnosed with a severe developmental delay requiring extensive therapy several times a week, there was no evidence offered as to the cost of this treatment. Therefore, on remand, evidence of cost must be offered if the trial court is to consider it in the calculations.
Our review of the record indicates that neither party followed the mandates of La.Rev.Stat. 9:315.8 F which states that "[t]he worksheet in R.S. 9:315.15, or a substantially similar form adopted by local court rule, shall be used to determine child support in accordance with this Section." Therefore, on remand we order both parties to provide the trial court with a completed worksheet, which the trial court can will use to recalculate child support in accordance with this opinion.

B. Attorney's Fees and Costs:
In her second assignment of error, Ms. Jackson argues that the trial court erred in failing to award the total amount of attorney's fees and costs actually incurred. She claims that she incurred $36,635.88 in attorney's fees and $621.00 in court costs, all "due to the outrageous actions of the defendant in this case." While we agree that Mr. Belfield has been less than cooperative during the course of this litigation, a court cannot award attorney's fees unless specifically authorized by statute.
Louisiana Revised Statute 9:398.1 provides that "[w]hen a court renders judgment in favor of a party seeking to establish paternity, it shall, except for good cause shown, award attorney's fees costs [sic] to the prevailing party. However, the provisions of this Section shall not apply to compensation of expert witnesses and recovery of blood or tissue testing costs in accordance with R.S. 9:397.1." This statute is located under Code Title VII, Chapter 1, Part I-A. Part, I-B of this section deals with "Child Support Following Judgment of Paternity." Section I-B does not provide for an award of attorney's fees in connection with obtaining child support once paternity is established. It would appear, therefore, that the legislature intended that a party may recover attorney's fees and costs only until a judgment of paternity is rendered. Therefore, attorney's fees and costs incurred by Ms. Jackson after April 9, 1997, the date the Judgment of Filiation was signed, are not recoverable.
The trial court has great discretion in calculating an award of attorney's fees. Fuge v. Uiterwyk, 97-1252, p. 4 (La. App. 4 Cir. 3/25/98), 709 So.2d 357, 359, writ denied, 98-1099 (La.6/5/98), 720 So.2d 1205. However, upon consideration of Mr. Belfield's tactics in delaying the paternity proceedings, and the additional attorney fees and costs occasioned thereby, we find that the trial court abused its discretion in making an award of only $3,500.00.
We have examined the billing statements submitted by Ms. Jackson's two attorneys. We find that many of Ms. Bridgeman's hours are not related to "attorney's" services, but rather to court runs, hand deliveries, and other clerical duties. We also note time charged for numerous phone calls between Ms. Bridgeman and Ms. Jackson that do not appear to relate to the issue of paternity. In addition, we note that time billed for trial preparation appears to be excessive and repetitive. It also appears that many of Mr. Ates' efforts were duplicative of those itemized by Ms. Bridgeman. Mr. Belfield should not be charged for two attorneys performing identical tasks, nor for one attorney merely to attend trial. In light of these considerations, we amend the award of attorney's fees and costs to $11,531.00, which represents approximately eighty-eight hours of attorneys' time and costs.[5]
For the foregoing reasons, we amend the award of attorneys' fees and costs in connection with establishing paternity to $11,531.00. We reverse the calculation of Mr. Belfield's *39 support obligation for his minor daughter, finding that he is voluntarily underemployed, and remand for a determination of his earning potential, Ms. Jackson's earnings, net child care costs, the cost of health insurance, preparation of worksheets in accordance with La.Rev.Stat. 9:315.8 F, and recalculation of the support obligation in accordance with this opinion.
AMENDED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Mediation never took place. According to a pleading filed on behalf of Ms. Jackson, Mr. Belfield unilaterally cancelled the mediation the day before it was set.
[2] The judgment indicates that the hearing was on September 15, however, the transcript indicates September 16, 1997.
[3] It is unclear from the record why no W-2 was submitted for 1994.
[4] We note that Ms. Jackson, likewise, did not provide any of this required documentation. We address this failure later in this opinion.
[5] Ms. Jackson's argument that there should be legal interest on the attorney's fee award from date of judicial demand rather than date of judgment is without merit. The statute that allows an attorney fee award in connection with establishing paternity does not support that argument nor does the rationale behind the retroactivity of child support awards.