799 So.2d 1226 (2001)
John David SAWYER, Plaintiff-Appellant,
v.
Melissa Diane SAWYER, nee Kelly, Defendant-Appellee.
No. 35,583-CA.
Court of Appeal of Louisiana, Second Circuit.
November 2, 2001.
*1228 Loomis & Dement, by Albert E. Loomis, III, Monroe, Counsel for Appellant.
Gregory S. Moore, Counsel for Intervenor Appellees, Vernon Sawyer and Nancy Sawyer.
McLeod Verlander, by Robert P. McLeod, Jr., Monroe, Counsel for Appellee.
Before NORRIS, STEWART and GASKINS, JJ.
STEWART, J.
The plaintiff, John David Sawyer ("John") appeals an award of custody and child support of the minor child, John David Sawyer, II ("John Jr."), and spousal support to Melissa Diane Sawyer ("Melissa"). John also appeals the trial court's finding of contempt as it relates to past due support. For the following reasons, we affirm.

FACTS
John and Melissa were married on March 6, 1993. There was no community property as per a pre-marital agreement. Their only child, John Jr., was born October 25, 1995. On January 18, 2000, Melissa left the matrimonial domicile and took John Jr. with her. John filed for divorce *1229 on February 14, 2000, requesting custody of John Jr. Melissa reconvened seeking custody and interim periodic child support. Central to this case was the dispute surrounding the actual amount of income and benefits John received from managing several companies for his parents and from the companies he individually owned. After considerable testimony concerning the extent of each party's income, the trial court found that John had income far in excess of the approximately $24,000 annual income he argued should be the measure of his income for the purpose of fixing support. Consequently, the trial court awarded Melissa primary custody of John Jr. and fixed child support at $1,438.00 per month, and interim periodic support to Melissa of $3,275.00 to run from the date of initial request to 180 days past judgment of divorce. Subsequent to the order granting custody and support, Melissa filed a rule for contempt and a judgment of past due child support and interim periodic spousal support. The trial court rendered judgment for Melissa on July 17, 2001, in the amount of $78, 571.25. That judgment has been consolidated with the instant appeal.

DISCUSSION

Custody Award
The best interest of the child is the paramount consideration in child custody cases. La. C.C. art. 131; Verret v. Verret, 34,982 (La.App. 2nd Cir 5/9/01), 786 So.2d 944; McIntosh v. McIntosh, 33,908 (La.App. 2nd Cir.8/31/00), 768 So.2d 219. La. C.C. art. 134 provides that the factors to be utilized in determining the best interest of the child in a custody dispute may include the following:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient aga to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. *1230 Rogers v. Stockmon, 34,327 (La. App. 2nd Cir.11/1/00), 780 So.2d 386. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the court. Hill v. Hill, 34,104 (La.App. 2nd Cir.1/24/01), 777 So.2d 1263.
Underlying the trial court's great discretion in child custody cases is its opportunity to better evaluate the credibility of witnesses. Accordingly, the trial court's determination of custody issues is afforded great weight and will not be disturbed on appeal absent an abuse of discretion. Hill v. Hill, supra.
John contends that the trial court erred in awarding Melissa primary custody of John Jr. He asserts that Melissa has demonstrated a "total unwillingness" to allow him to spend any time with his child. John complains that despite his best efforts to contact his son, he was been hampered by the lack of cooperation from Melissa.
John believes that Melissa's attempts to sabotage his relationship with his son by not letting him see the boy resulted in court appointed expert, Dr. Daniel Prior's, conclusion that the boy was more comfortable with his mother than with him (John) and his subsequent recommendation that Melissa be the domiciliary parent.
Further, John alleges that Melissa was involved in a series of affairs starting with Kevin Ward before reuniting with her first husband, Kevin Kelly, and that John Jr. was exposed to danger through her relationship with Kevin Kelly because Kelly was an abusive alcoholic. John contends that Melissa has spent time carousing and partying with Kelly in the presence of John Jr. John asserts that Melissa's relationship with Ward began while they were still married and this adultery is not a good indicator of her moral fitness as custodial parent.
The trial court thoroughly considered the factors enumerated under La. C.C. art. 134 and the credibility of the witnesses and determined that while joint custody would be awarded, Melissa should be the domiciliary parent. Through twelve pages of his judgment, the trial judge notes that the balance of the testimony from a multitude of witnesses including, former wives, former husbands, bank officers, psychologists, neighbors, and employees pointed to a pattern that indicated that the best interests of the child would be served by allowing him to remain with his mother. The court concluded that any problem associated with John not being able to see his child was caused by his own neglect. The court noted that Melissa's relationship with Kevin Ward, while ill timed, did not demonstrate any lack of moral fitness or wrongdoing on her part. Moreover, the joint custody plan of the trial court provides John adequate opportunity to interact with his son. The findings of the court were not manifestly erroneous. This assignment is without merit.

Child and Spousal Support
Central to John's assignments of error regarding child and spousal support is his contention that the trial court erred in its calculation of his income resulting in improper awards of support.
The guidelines for determination of child support are set forth in La. R.S. 9:315.1, et seq., and apply to any proceeding to establish or modify child support filed after October 1, 1989. There shall be a rebuttable presumption that the amount of child support obtained by use of these guidelines is the proper amount of child support. Generally, the trial court's order of child or spousal support is entitled to great weight and will not be disturbed on appeal absent clear abuse of discretion. Hudnall v. Hudnall, ___ So.2d ___, 2000 *1231 WL 503011 (La.App. 1st Cir.5/11/01). Gross income is defined in La. R.S. 9:315(4), in pertinent part, as follows:
(4) "Gross income" means:
(a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, worker's compensation benefits, unemployment expense benefits, disability insurance benefits, and spousal support received from a preexisting spousal support obligation;
(b) Expense reimbursement or in-kind payments received by a parent in the course of employment, or operation of a business, if the reimbursements or payments are significant and reduce the parent's personal living expenses. Such payments include but are not limited to a company car, free housing, or reimbursed meals; and
(c) Gross receipts minus ordinary and necessary expenses required to produce income, for purposes of income from self employment, rent royalties, proprietorship of a business, or joint ownership or partnership of a closely held corporation. "Ordinary and necessary expenses" shall not include amounts allowable by the Internal Revenue for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income for purposes of calculating child support. (Emphasis added).
One cannot avoid all or part of his child support obligation by exercising exclusive control over a corporation wholly owned by him in order to limit his own salary. Hudnall, supra, quoting Moncus v. Moncus, 510 So.2d 1271, 1276 (La.App. 3rd Cir.), writ denied, 514 So.2d 462 (La. 1987). Additionally, the personal use of a corporation's assets to pay living expenses or the use of corporate income as a fringe benefit must be credited to gross income. Hudnall, supra; Baggett v. Baggett, 96-453 (La.App. 3rd Cir.4/23/97), 693 So.2d 264.
The 1999 federal tax return of the parties shows total wages of $49,045 with John's $34,313.50 and Melissa's $14,731.50. According to John, tabled child support would be 60% of $492.00 or $295.00 if earnings are husband-$535.00 a week and wife $300.00 per week. John represents that he and Melissa together earned $3,440.00 a month; thus an award of $3,275.00 a month in spousal is grossly out of proportion to his income, and that the trial court's use of his business interests in its computation of his income for the purposes of awarding spousal support was misplaced. John contends that he was earning $500.00 per week and Melissa was earning $300.00 per week while in the employ of KALI, Inc. However, they also performed services for Sawyer Transportation Inc., and Sawyer Inc. to avoid double charges on payroll. John claims to have sold his interest in Sawyer Inc. and Sawyer Transportation to his parents, but John retained full managerial powers including unbridled use of company funds for personal use. Additionally, although John and Melissa jointly owned Chief Truck, Tractor and Equipment, the business lost money before being shut down in or around August of 2000.
Melissa alleges that John had "total control" of both companies from the early 1990's until this trial was over; and John's parents never put any money in, nor took any money out of the companies. Further, John freely switched many thousands of dollars of personal funds with corporate funds and put them in his own pocket whenever he saw fit without the knowledge or consent of his parents. Finally, even if *1232 John voluntarily left these companies, he continues to work for them; thus, the income should be imputed to him. John is heavily involved in his parents' trucking companies and merely simulated transfer of his interests in Sawyer Inc. and Sawyer Transportation to his parents to avoid having them factor in his income in his divorce from his second wife, Fran. The trial court was proper in considering all of John's potential income under La. R.S. 9:315(6)(b) for the purposes of awarding support.
Melissa submits that her income has been misrepresented by John. The $300.00 she earned a week while they were married was only because she left school to help him with the businesses. She is now a full time nursing student at Louisiana Tech. She will graduate from college in November of 2002 and become a registered nurse. Melissa alleges that John absorbed all of her assets including the $50,000 CD pledged to secure debts by companies John now disclaims. Melissa contends that the court's finding of significant income by John warrants that their son receive the best education possible, and John can afford to send their son to private school.
After hearing testimony the trial court concluded that the evidence showed a gross understatement of income through contrived manipulation of the income of John and his family. The record shows that John had free access to all of the assets of the family corporations he ran, particularly Sawyer Trucking and Chief Trailer and Equipment, and "could do as he pleased" with the money. Moreover, the trial court found a pattern in John's behavior in domestic litigation with his three wives. That pattern involved a "routine going towards underemployment and business problems as issues of support and even property settlement were raised in other custody and marital issues that have been in front of him (John)." The court noted that John was attempting to minimize or avoid his support obligations by artifice. Evidence adduced at trial demonstrated that despite John's claims of limited income, the total income of the parties had been far in excess of what was shown on the tax returns. They went on luxury vacations, used private jets, owned an extravagant home, expensive vehicles, a pool house, and a boatitems certainly indicative of greater income than what was reported on the W-2 forms.
John did not just run Sawyer Transportation, Inc., Sawyer, Inc. & KALI, Inc, for his parents. He exercised complete control of the companies. Despite being listed as the owners of the companies, John's parents neither put money in nor took any out of the companies. He freely switched corporate funds and personal funds from all three companies into his pockets. John used thousands of dollars from these companies to pay for legal bills associated with these case.
The instant case is analogous to Jackson v. Belfield, 98, 0440 (La.App. 4th Cir.11/25/98), 725 So.2d 32 in which the court found a husband's failure to cooperate in explaining and documenting his income amounted to an attempt to conceal his true income to avoid support obligations. In Jackson, supra, the husband, who was an attorney, claim to live the extravagant lifestyle he enjoyed through the "generosity of friends." He was a professional liability corporation but claimed an annual income of only $40,000 which would give him and hourly wage of $20 per houra rate the court found grossly out of line with an attorney enjoying his lifestyle. Thus, the court found the husband to be underemployed, and remanded the case for a determination of his income potential.
Unlike the trial court in Jackson, the trial court in this case made a determination *1233 of John's income or potential income. The trial court believed that the evidence demonstrated his income to be "far in excess of $10,000 a month." This finding was based on exhaustive testimony as to the lifestyle enjoyed by John and Melissa and John's free use of corporate funds to support his lifestyle. Although the trial court was unable to concretely calculate John's income, the record amply supports the trial court's finding that John hid his extensive income through the use of these closely held corporations. Thus, this finding is not manifestly erroneous.
Likewise, the court followed the same analysis in fixing John's child support obligation. John contends that the trial court was equally misguided when fixing his child support payments for John Jr. at $1438.00 a month. Moreover, John alleges that the trial court failed to take into account that he pays only $340 a month child support for a child from a previous marriage. Finally, the trial court also failed to consider Melissa's earning potential of at least $1290 a month as evidenced by the money she made while they were married. However, the evidence showed that Melissa was only able to earn the money she did because she quit attending college to work at the family companies when she and John were married.
As to the child's needs, John contends that no special need has been shown for his son to need to attend and expensive private school in Ruston. He cites Shaw v. Shaw, 30,613 (La.App. 2nd Cir.6/24/98), 714 So.2d 906, writs denied 98 2414, 98-2426 (La.11/20/98) 729 So.2d 556, 558 for the proposition that a private school must fulfill a particular educational need of the child in question in order to be factored into child support. However, in Shaw there was a dispute over sending the child to private school versus a similarly situated public school. In the instant case, Melissa and John already had made steps to register John Jr at a private school in Monroe while they were still together. John's other child attends private school, and John and Melissa both attended private schools while growing up. Even if Melissa has shown no particularized need for private school, a parent's ability to pay and the lifestyle that the child otherwise would enjoy if the parents had not separated are important considerations. State v. Baxter, 33,108 (La.App. 2nd Cir.5/10/00), 759 So.2d 1079. The court determined that the parent's gross income exceeded $10,000 a month. Consequently, the court in its discretion may consider the child's lifestyle and needs. Thus, the inclusion of the private school in the award of support was not manifestly erroneous. This assignment is without merit.

Contempt Order
The trial court is vested with great discretion in determining whether a party should be held in contempt for disobeying the Court's order and its decision will only be reversed when the appellate court can discern an abuse of that discretion. Stephens v. Stephens, 30,498 (La. App. 2nd Cir.5/13/98), 714 So.2d 115.
On May 15, 2001, Melissa filed a Rule for Contempt and for Judgment of Past Due Support against John because he had not paid any child or spousal support from the March 28, 2001, judgment in the amount of $78,571.25 against him. John contends that he was not in willful contempt of the order because he is appealing the ruling. However, in the contempt hearing the trial court found that John continues to hide his assets through his family. Specifically, John transferred his home to his parents for $50,000, who in turn, transferred the house to his sister for $108,000, who then sold it to a third party for $240,000. The trial court found the sale of a $200,000 house for one-fourth of *1234 its value was indicative of John's lack of good faith in revealing all of his assets and just another attempt to avoid paying child support and alimony. Displeasure or disagreement with the judgment of a court is not grounds to not abide by its ruling. Therefore, the trial court did not err in finding John in contempt. This assignment is without merit.

CONCLUSION
It is clear that the plaintiff-appellant has a pattern of hiding his true income through the use of closely held corporation in order to avoid child support and alimony obligations. The trial court was not manifestly erroneous in finding that the plaintiff's income exceeded $10,000 per month for the purposes of fixing support. The court was also correct in finding the appellant in contempt of court for failing to pay the judgment against him. Based on the foregoing, we affirm the ruling of the trial court with the costs of this appeal assessed to the appellant.
AFFIRMED.