55 So.3d 826 (2010)
Jason Ted GRAY, Plaintiff-Appellant
v.
Christy Lynn Winnon GRAY, Defendant-Appellee.
No. 45,826-CA.
Court of Appeal of Louisiana, Second Circuit.
November 17, 2010.
Opinion Granting Rehearing January 13, 2011.
Rehearing Denied February 15, 2011.
*827 Donald L. Kneipp, Monroe, LA, for Appellant.
Alan J. Norris, for Appellee.
Before WILLIAMS, STEWART and CARAWAY, JJ.
WILLIAMS, J.
The plaintiff, Jason Gray, appeals judgments denying his relocation to Kansas with the parties' minor child and modifying the prior custody award. The court designated the defendant, Christy Bruner, as the primary domiciliary parent of the child and awarded the father visitation. For the following reasons, we affirm.

*828 FACTS
In October 2001, a child was born of the marriage of Jason Gray ("Gray") and Christy Bruner, formerly Gray ("Bruner"). The matrimonial domicile was in Morehouse Parish, Louisiana, until the parties separated in May 2005. In a consent judgment, the parties were awarded joint custody of the minor child and Gray was designated as the domiciliary parent. Subsequently, the district court rendered a judgment of divorce. In March 2007, Gray gave notice of his intent to relocate with the child to Alabama to join his fiancee, Jamie Schmitt, who had moved there because of her job with John Deere Credit. Bruner filed an objection to the relocation and a rule to modify the domiciliary custody. After a conference in June 2007, a hearing officer recommended that Gray's proposed relocation be denied and that Bruner be awarded primary custody of the child. In October 2007, following a trial, the court approved the father's relocation with the child to Alabama and denied the mother's motion to modify custody. The court found that Bruner had not completely recovered from her abuse of prescription drugs. In November 2007, Gray moved to Alabama with the child.
Approximately one year later, Gray sent Bruner notice of a proposed relocation with the minor child to Kansas, based on another job transfer by Jamie, who was then Gray's wife. Bruner filed objections to this proposed relocation in Louisiana and Alabama. In Louisiana, the court issued an order prohibiting Gray from relocating the child to Kansas pending a hearing and the Alabama court declined to exercise jurisdiction over the proposed relocation. Gray moved to Kansas with the child in violation of the court order and then filed a motion for a temporary order to relocate. In January 2009, Bruner filed a rule to modify custody seeking an award of primary domiciliary custody.
After a trial on the objection to relocation and the modification of custody, the court issued oral reasons for judgment discussing its consideration of the relocation factors of LSA-R.S. 9:355.12. The court found that in moving to Kansas the father was subordinating the child's best interest to the advancement of his current wife's career, which had required frequent moves, and that the relocation was not in the child's best interest. The trial court rendered judgment denying the relocation of the minor child to Kansas and ordering the parties to submit briefs regarding whether the modification of custody in this case required application of the standard in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
Subsequently, the trial court issued oral reasons for judgment finding that the Bergeron standard was not applicable to this situation because the statutory exception of LSA-R.S. 9:355.11 provides that the relocation of a party in violation of a court order is a sufficient change in circumstances to support the modification of custody. Alternatively, the court found that even if Bergeron was applicable, then Bruner had satisfied her burden of proving that a change in circumstances materially affecting the child's welfare had occurred through her rehabilitation from a past drug addiction, and that any harm caused by a change of environment would be substantially outweighed by the advantages to the child, such as more frequent contact with his maternal and paternal grandparents. The court rendered judgment granting a modification of custody, designating Bruner as the primary domiciliary parent of the minor child and awarding Gray scheduled visitation. Gray appeals both judgments.

DISCUSSION
Gray contends the trial court erred in sustaining the objection to relocation of the *829 child. Gray argues that the evidence showed the move to Kansas was in the child's best interest and that the court should have compared Alabama, not Louisiana, as the alternative situation in applying the relocation factors.
A trial court's determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion. Curole v. Curole, 02-1891 (La.10/15/02), 828 So.2d 1094; Bingham v. Bingham, 44,292 (La.App.2d Cir.5/13/09), 12 So.3d 448. Pursuant to LSA-R.S. 9:355.13, the parent seeking relocation has the burden of proving that the proposed relocation is made in good faith and in the best interest of the child. LSA-R.S. 9:355.12 provides that in making a decision regarding a proposed relocation, the court shall consider these factors:
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving a good relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the nonrelocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) The current employment and economic circumstances of each parent and whether or not the proposed relocation is necessary to improve the circumstances of the parent seeking relocation of the child.
(9) The extent to which the objecting parent has fulfilled his or her financial obligations to the parent seeking relocation, including child support, spousal support, and community property obligations.
(10) The feasibility of a relocation by the objecting parent.
(11) Any history of substance abuse or violence by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.
(12) Any other factors affecting the best interest of the child.
Although the statute mandates that all the listed factors be considered, the court is not required to give preferential consideration to any particular factor. Curole, supra; Parker v. Parker, 44,246 (La.App.2d Cir.5/13/09), 12 So.3d 485.
In the present case, the trial court thoroughly considered the statutory factors. The court noted that the child was able to enjoy a close relationship with both parents. However, the record shows that the relocation to Kansas would have taken the child farther away from his mother and from other significant persons in the *830 child's life, such as his maternal and paternal grandparents. The court expressed concern over the disruption of the child's education caused by the father's move to Kansas. The child was removed from first grade in Alabama in the middle of the school year and then missed two weeks of school in January 2009, before being enrolled in Kansas. There was no showing that Kansas offered the child significantly better educational opportunities than Alabama. The court was also concerned that with the three-hour longer driving distance to Kansas, preserving a good relationship between the child and his mother would be less feasible.
At trial and in his appellate brief, Gray emphasized the financial difficulties and debt of Bruner and her current husband as a factor supporting relocation. However, the court was not required to give more weight to this factor than to others. In addition, the evidence showed that the relocation to Kansas would not immediately enhance the general quality of life for Gray and the child, because the father left a job with Helena Chemical at a salary of $50,000 to start a new job as an insurance salesman with a guaranteed starting income of $2,000 per month. The court noted that the father's primary motivation to relocate was to follow his wife in moving for the needs of her employer, whereas the mother objected to relocation because of her fear that her relationship with the child would be diminished. The court found that Bruner had been successful in recovering from her past prescription drug abuse through rehabilitation.
Based upon the evidence presented and the applicable statutory factors, we cannot say the trial court erred in finding that Gray failed to satisfy his burden of proving that relocation was in the child's best interest. Consequently, the court did not abuse its discretion in denying the relocation of the child. The assignment of error lacks merit.

Custody
Gray contends the trial court erred in modifying the custody of the child. Gray argues that Bruner failed to show that the benefits of modifying custody would outweigh the harm of the child's reduced financial security.
The best interest of the child is the paramount consideration in child custody cases. LSA-C.C. art. 131; Sawyer v. Sawyer, 35,583 (La.App.2d Cir.11/2/01), 799 So.2d 1226. LSA-C.C. art. 134 provides a number of factors for the court to consider in determining the child's best interest, including the capacity of each parent to give the child love, to continue the child's education and to provide for the child's material needs, and the length of time the child has lived in a stable, adequate environment. The court is not required to make a mechanical evaluation of all the statutory factors, but should decide each case on its own facts in light of those factors. Sawyer, supra. The trial court's determination of custody issues is afforded great weight and will not be disturbed on appeal absent an abuse of discretion. Sawyer, supra. After a court has made a considered decree of custody, the party seeking change has the burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of custody, or proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron, supra.
In the present case, the trial court applied the Bergeron standard as an alternative basis for modifying the prior custody order. The court found that with the father as domiciliary parent, the child's interest in having a stable environment was *831 secondary to the needs of the stepmother's career, as indicated by the father's move to Kansas one year after taking the child to Alabama. The court determined that maintenance of a stable environment for the child would be better achieved in the mother's household. Noting that most of the child's extended family resided near the mother in Louisiana, the court found that modification would give the child the best chance to maintain meaningful contact with his grandparents and other family members. The testimony showed that the child was close to his great-grandmother, who was 81 years old and had helped care for the child since his birth.
Based on the father's previous withdrawal of the child from school in the middle of the year, the court determined that the child's education would be less likely to be disrupted after modification, thereby giving the child a better opportunity to learn and develop friendships at school. There was testimony that in Ruston, where the mother resided with her current husband, the elementary school which the child likely would attend was very good.
The trial court was aware that the mother did not have the same financial capacity as the father to provide for the material needs of the child. However, the evidence showed that the mother was able to adequately feed, clothe and care for the child with assistance from her family. Although Gray contends the court should have given more weight to the financial inequality of the parties, the court exercised its discretion in weighing that factor along with the others.
Based upon the evidence presented, the record supports the trial court's determination that the advantages to the child resulting from modification, particularly the opportunity for a more stable home and school environment and more frequent contact with grandparents and other family members, substantially outweighed any detriment to the child caused by the reduced financial security in the mother's household. Consequently, we cannot say the trial court abused its discretion in modifying the custody order to designate the mother as the domiciliary parent of the minor child. The assignment of error lacks merit. In reaching this conclusion based on the trial court's application of the Bergeron standard, we pretermit any discussion of the issue of whether LSA-R.S. 9:355.11 constitutes a statutory exception to the burden of proof required for modification of a considered custody decree under Bergeron.

CONCLUSION
For the foregoing reasons, the trial court's judgments modifying custody of the child and denying relocation of the child are affirmed. Costs of this appeal are assessed to the appellant, Jason Gray.
AFFIRMED.
CARAWAY, J., dissents with written reasons.
CARAWAY, J., dissenting.
With the Bergeron test and its major concerns lost in this matter's "relocation" emphasis, the majority's and trial court's change of custody rulings are in error.
The initial trial court ruling in 2007 which allowed the domiciliary parent ("Gray") to move to Toney, Alabama, was a unique "considered decree" as that term has been raised to most important significance by the ruling in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986). Not only did the parents contest in 2007 the custody of their child, the facts of the additional complicating factor of relocation were also "considered" and adjudicated under the special relocation statutes for custody in *832 La. R.S. 9:355.1, et seq. While the best interest of the child test is always paramount, the "considered decree" of 2007 not only measured the relevant considerations of Civil Code Article 134 but also the special quality of life, parental employment, financial and feasibility factors associated with relocation to another state set forth in La. R.S. 9:355.13. Once adjudicated by one district judge in 2007, a different district judge in 2010 is prohibited by Bergeron from allowing the same matter of relocation to be adjudicated again.
First, in our highly mobile society, joint custody arrangements, even those operating harmoniously under the best of conditions, can become greatly impacted by the economic need of a parent to relocate to another state. A framework for a custody decision caused by such relocation is therefore specifically addressed in La. R.S. 9:355.1, et seq. From the standpoint of logistics alone, given the great distance between the parents' residences, the decision is difficult. That difficult decision was made in 2007 with Gray being allowed to remain as domiciliary parent and move to Alabama, a great distance from the location of the prior joint custody setting in Louisiana.
Second, the statute's definitional terms provide that "relocation" means "[i]ntent to establish legal residence with the child at any location outside of the state." La. R.S. 9:355.1(4)(a). In the light of Bergeron, the correct reading of that definition is that the initial establishment, founding or beginning that out-of-state residency, is Louisiana's concern for adjudication when the nexus of joint custody operating in Louisiana is first broken.
Third, once relocation out of state has occurred and the special factors of La. R.S. 9:355.13 have been considered and adjudicated, the further litigation of virtually those same factors amounts to a suit for a change of custody and not a suit for relocation, thus implicating the serious concerns of Bergeron. For example, if Gray's move amounted to 30 miles to the other side of Huntsville, Alabama, has "relocation" occurred, throwing open the courthouse doors for further parental conflict over virtually the same geographical and related concerns that were the subject of the prior judicial conflict and considered decree? Once the first adjudication of relocation allows primary custody with the out-of-state parent and a smaller amount of time spent with the Louisiana parent during the school year, the critical best interest of the child determination is that the child should be with that parent for the greater amount of time. The specific location in Alabama or Kansas is not the linchpin of the ruling.
Not once in the majority's opinion is it said that this child's continued custody with Gray will be so deleterious to the child so as to justify the child's return to Louisiana. Neither was Bergeron's observation about relocation noted:
There is evidence that more harm is done to children by custody litigations, custody changes, and interparental conflict, than by such factors as the custodial parent's post divorce amours, remarriage, and residential changes, which more often precipitate custody battles under liberal custody modification rules than conduct that is obviously harmful to the child, such as abuse or serious neglect.
Id. at 1199. Instead, the factors of Article 134 and the relocation statute are now re-examined as though the prior conclusion of a different district judge was a mistake. Most importantly, nothing is said in the trial court's ruling that found fault with the bond between the primary custodian and his son reflecting badly on Gray's care. As for the change of schools, the *833 ruling for the child's return to school in Ruston, as opposed to Bastrop where the child had previously attended school, is no different from the change from Alabama to Kansas.
Likewise, the majority's opinion makes no comparison with other cases applying Bergeron. The heightened Bergeron standard, requiring proof that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, has been applied to disrupt considered custody arrangements sparingly and reserved for the most egregious offenses. See AEB v. JBE, 99-2668 (La. 11/30/99), 752 So.2d 756 (sexual molestation by stepbrother); Howard v. Oden, 44,191 (La.App.2d Cir.2/25/09), 5 So.3d 989, writ denied, 09-0965 (La.6/26/09), 11 So.3d 496 (abuse by parent's subsequent spouse); Ard v. Ard, 628 So.2d 1221 (La.App. 3d Cir.1993) (punishment methods reflected an insensitivity and lack of awareness of the deepening problems that the children were experiencing and extremely severe "parent bashing"); Hull v. Hull, 542 So.2d 205 (La. App. 3d Cir.1989), writ denied, 546 So.2d 1216 (La.1989) (mother repeatedly giving birth to children out of wedlock in total disregard for the moral well-being of her adolescent children).
Consistent in their approach, courts have been hesitant even in relocation settings to change custody once a considered decree has been entered. Johnson v. Johnson, 93,1015 (La.App. 1st Cir.3/11/94), 634 So.2d 31 (father's removal of child to another state without notice to mother was not so deleterious as to mandate change in custody); Weems v. Weems, 548 So.2d 108 (La.App. 2d Cir.1989) (evidence that mother had remarried, moved with her children to Texas, and had refused to transfer custody to father during summer months as required by joint custody order was insufficient to warrant amendment of order to make father primary domiciliary parent). See also, Knowlton v. Knowlton, 40,931 (La.App.2d Cir.4/12/03), 927 So.2d 640 (no deleterious circumstances found despite daughter's disciplinary problems and expressed desire to live with other parent); Rome v. Bruce, 09-155 (La.App. 5th Cir. 10/13/09), 27 So.3d 885 (no cause of action when father's petition, complaining of child failing kindergarten and first grade and mother living with another man out of wedlock, did not allege facts so deleterious as to warrant change in custody); Lee v. Lee, 34,025 (La.App.2d Cir.8/25/00), 766 So.2d 723, writ denied, 00-2680 (La.11/13/00), 774 So.2d 150 (despite the fact that mother made significant improvements in her emotional and physical well-being by maintaining steady employment and establishing a stable home, trial court abused its discretion in changing custody when evidence showed children had strong bonds with both parents and children were thriving under current custody arrangement); Plunkett v. Plunkett, 576 So.2d 100 (La.App. 2d Cir. 1991) (no modification of considered decree based on divorced wife's evidence that husband committed adultery).
Having read the lengthy trial court ruling in 2007 when the decision to allow the domiciliary parent to relocate to Alabama was made, I'm convinced that Bergeron requires new judges in 2010 to protect the best interest of the child and allow the established custody to remain stable. Bergeron was lost in the trial court's misguided focus on the relocation statute, and I respectfully dissent.

On Rehearing
Before WILLIAMS, STEWART, CARAWAY, DREW and MOORE, JJ.
CARAWAY, J.
Finding that the trial court's change of custody ruling in favor of *834 Christy Lynn Winnon Bruner ("Bruner") did not follow the requirements of Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), we granted rehearing and now reverse the ruling and restore custody in the domiciliary parent, Jason Ted Gray ("Gray").
The recitation of the facts as set forth in this court's original opinion is accepted for the purposes of this ruling on rehearing. Those facts noted that "the child was able to enjoy a close relationship with both parents," regardless of the distance between the parents because of Gray's out-of-state residency. The previously adjudicated relationship of joint custody allowing for relocation outside of Louisiana was neither alleged nor shown to be detrimental to the child during the period following the initial judgment. The additional three-hour driving time from Kansas was likewise not shown to affect "the responsibility for the care and rearing of the child previously exercised by each party" under the existing order allowing Gray to relocate out-of-state. See La. C.C. art. 134(12). No allegation in Bruner's rule to modify custody asserted that "the love, affection, and other emotional ties" existing between Gray and his son, another of the factors of C.C. art. 134, were harmed or neglected because of Gray's conduct. Although she asserted that the proposed move to Kansas would disrupt the child's school environment, there is no allegation of harm or change to the family environment for Gray and the child. The relationship was continuously fostered by the father's love, affection and other emotional ties since the time of the initial judgment.
With this fact setting, which involves only a change in the out-of-state location of the domiciliary parent, the question presented concerns how the special relocation act (La. R.S. 9:355.1, et seq.) (hereinafter the "Act") applies a second time in light of the important considerations of Bergeron.
At the time of the initial decision allowing Gray to remain as domiciliary parent in the 2007 relocation to Alabama, the "considered decree" adjudicated the custody dispute under the special multiple factor test of Section 355.12 of the Act. Again, in Bruner's present action to modify custody, the trial court considered the test of Section 355.12 and placed the burden of proof on Gray under Section 355.13 as the parent proposing the relocation. The enumeration of the many factors in Section 355.12 parallels the listing of the multiple factor test of Civil Code Article 134 with special emphasis on the logistical and economic circumstances associated with a relocation and, particularly in this case, an out-of-state relocation. Factor 12 of Section 355.12 brings "any other factor affecting the best interest of the child" into consideration in the relocation contest, thereby requiring review of the Article 134 factors. Indeed, the best interest of the child is always paramount. Therefore, in the time span of only 24 months, separate trial judges made conflicting Section 355.12 rulings concerning Gray's out-of-state residency.
Some of the justifications for the heavy burden of proof of the Bergeron ruling concerned protecting parties and the child from vexation and expense attendant to multiple unjustified lawsuits, conserving judicial resources, and minimizing the possibility of inconsistent decisions. Bergeron, supra, at 1195. These procedural concerns address the substantive best interest of the child principle. Citing the prior ruling of the court in Turner v. Turner, 455 So.2d 1374 (La.1984), the Bergeron court emphasized that "the important thing is not to abuse the children by dragging them constantly through the court system, when there has not been a real change in circumstances sufficient to justify a change in custody."
*835 The significant change in circumstance which was adjudicated in this case in 2007 was the out-of-state relocation. At that time, the nexus of joint custody operating in Louisiana was first broken. The Act's special framework to adjudicate the parental sharing of custody was employed at that time, resulting in a decision to allow Gray to remain as domiciliary parent and move a great distance away from the state. With out-of-state relocation at the center of the controversy in 2007, the critical best interest of the child determination was that the child should be with Gray for the greater amount of time.
Despite Gray's move from Alabama to Kansas, no change in the multistate status of the existing custody arrangement and no significant change in the distance between the parents have occurred. The new location of residence is thus similar to an intrastate move by a domiciliary parent. In such cases before and after the Act, "it has been held that an intrastate move is not per se a material change of circumstances such that a court may presume that it will materially affect the child's welfare without further evidence." Major v. Major, 02-2131 (La.App. 1st Cir.2/14/03), 849 So.2d 547, and cases cited therein. See also, Cooley v. Cooley, 94-251 (La.App. 3d Cir.10/5/94), 643 So.2d 408; Bercegeay v. Bercegeay, 96-0516 (La. App. 1st Cir.2/14/97), 689 So.2d 674. Such intrastate relocation by the domiciliary parent usually disrupts the child's school environment, but that is not automatically a material change in circumstances that allows parents abiding under existing custodial consent decrees to seek a change in custody. We likewise do not view the additional distance now involved with this multistate custody arrangement as amounting to a "material change of circumstances,"[1] which is a lesser measure for a change of custody than the heavy burden of Bergeron.
Reviewing the provisions of the Act, we find that the Bergeron concerns are not legislatively overridden in a case seeking relitigation under the Act. This is an out-of-state relocation situation, falling under the Section 355.1(4)(a) definition of relocation as "intent to establish legal residence with the child at any location outside of the state." Id. In the light of Bergeron, the correct reading of the definition is that the initial establishment, founding or beginning of that out-of-state residency is the Act's concern for adjudication. That adjudication occurred in 2007 and out-of-state residency by the domiciliary parent was decided.
Even more significant, the applicability of the Act is limited in Section 355.2(B), as follows:
To the extent that a provision of this Subpart conflicts with an existing custody order, this Subpart shall not apply to the terms of that order that governs relocation of the child.
When Bruner filed her rule to change custody, there was "an existing custody order... that govern[ed] relocation of the child," which was a considered decree under Bergeron and satisfied all the criteria of Section 355.12. The conflict which has now arisen between the initial trial judge's custody determination and the present trial court ruling is within the meaning of "conflict" which Section 355.2(B) addresses and clearly within the important concerns of Bergeron. The trial court erred in allowing *836 the parties to relitigate the issues previously resolved under Sections 355.12 and 355.13.
Accordingly, there being no showing that the child's continued custody with Gray will be so deleterious to the child as to justify a change in custody, the ruling of the trial court is reversed. Costs of appeal are assessed to appellee.
REVERSED.
WILLIAMS, J., dissents with written reasons.
STEWART, J., dissents for reasons assigned by Judge WILLIAMS.
WILLIAMS, J., dissents.
I respectfully dissent for the reasons expressed in the original opinion, in addition to the following remarks in response to the creative legal reasoning displayed in the majority opinion.
Despite the asserted strict adherence to Bergeron, the majority ignores the second part of the heavy burden standard, which provides for a change in custody after a considered decree upon clear and convincing proof that the harm likely to be caused by a change of environment is substantially outweighed by the advantages to the child. Significantly, the majority also fails to mention the appellate standard of review reaffirmed by Bergeron, in which the supreme court mandates that on appeal, the trial court's determination in child custody matters is entitled to great weight and the court's discretion shall not be disturbed on review absent a clear abuse of discretion.
In this case, the trial court carefully considered the best interest of the child, finding that there would be a substantial benefit to the child in residing with his mother in close proximity to his grandparents and extended family and that there was little likelihood of harm to the child by a change in physical custody. The trial court's determination was reasonably supported by the record, which shows that the child's home environment was disrupted by relocations twice within one year and that the child's education was interrupted by the father's conduct in moving the child to yet another state in violation of the existing court order. The majority has simply substituted its own view of the evidence for that of the trial court in disregard of the proper standard of appellate review.
In addition, the majority has not presented any persuasive legal authority for the assertion that once a relocation issue has been decided by a district court, Bergeron prohibits the consideration of any subsequent relocation of the child, regardless of the particular circumstances of such a proposed relocation. Nor does the statute support the majority's contention that after an initial relocation has occurred, the relocating parent is then relieved of the burden of proving that another move is in the child's best interest. To the contrary, the express language of LSA-R.S. 9:355.13 places the burden of proof on the parent seeking relocation. There was no showing that the Legislature intended any different burden for subsequent relocations.
Similarly, the statutory language contradicts the majority's assertion that the definition of relocation means only the first out-of-state relocation. The reference in Section 355.1(4) to "any location outside of the state" would reasonably include a move to Kansas, whether or not there had been a previous residence in Alabama. Finally, I would suggest that Section 355.2(B) must be read in conformity with the preceding paragraph, which merely addresses the applicability of the law based upon its effective date. Thus, this statutory provision cannot reasonably be interpreted *837 as a limitation on the trial court's ability to consider the relocation issue in this case. Based upon this record and the applicable law, I would affirm the trial court's judgment.

APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, DREW and MOORE, JJ.
Rehearing application of Christy Gray denied.
WILLIAMS and STEWART, JJ., would grant rehearing.
NOTES
[1] A "material change of circumstances" is the legal measure for change of custody consideration where the original custody decree was not the result of a "considered decree." Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731. The "considered decree" setting is governed by Bergeron.