768 So.2d 219 (2000)
Jeanne S. McINTOSH, Plaintiff-Appellant,
v.
James A. McINTOSH, Defendant-Appellee.
No. 33,908-CA.
Court of Appeal of Louisiana, Second Circuit.
August 31, 2000.
*220 Jack Wright, Jr., Monroe, Counsel for Appellant.
James E. Norwood, West Monroe, Counsel for Appellee.
Before BROWN, WILLIAMS and PEATROSS, JJ.
WILLIAMS, Judge.
The plaintiff, Jeanne McIntosh, appeals a judgment awarding sole custody of the parties' minor children to the defendant, James McIntosh. The trial court granted the mother visitation on alternate weekends and holidays, and ordered her to pay child support. For the following reasons, we affirm.

FACTS
James and Jeanne McIntosh were married in 1992. Two children, Connor and Talor, were born of the marriage. In 1997, Jeanne filed a petition for a Civil Code Article 102 divorce. The district court entered a consent order in which the parties agreed that Jeanne would have sole custody of the minor children with limited supervised visitation by James.
In January 1999, James filed a petition to modify custody alleging that Jeanne was making increased demands for money in addition to child support, and was denying him visitation. He requested joint custody designating the mother as domiciliary parent. A February 1999 interim order was entered granting James unsupervised visitation on alternate weekends and ordering him to attend anger management counseling. The district court also appointed E.H. Baker, Ph.D., to conduct psychological evaluations of the parents and children. A short time later, Jeanne filed a complaint with child protection services accusing James of abusing the children. The complaint was investigated and dismissed.
In April 1999, Jeanne filed a petition for domestic abuse protection alleging that James had come to her home and started a fight with her boyfriend, Joseph Simpson, whom she later married. James stated that he had been physically attacked and choked by Simpson while dropping off *221 some toys. After a hearing, the court found that a protective order was not warranted and dismissed the action.
Thereafter, James filed a motion to amend custody, seeking an award of sole custody and child support. He then filed an ex parte motion for an emergency order of temporary custody alleging that Jeanne had begun living with Joe Simpson, a man with a criminal history. The court granted temporary custody of the children to James pending a hearing, with visitation by the mother every other weekend, subject to the limitation that she not visit with the children in Simpson's presence. In June 1999, the custody hearing commenced and was continued, with the court maintaining its previous orders.
In September 1999, the hearing on the custody rule resumed. Subsequently, the trial court issued written reasons and rendered judgment awarding sole custody of the children to the father. The mother was granted visitation on alternate weekends and holidays, to be exercised outside of Simpson's presence. She was also ordered to pay child support of $200 per month. Jeanne appeals the judgment.

DISCUSSION
Jeanne contends the trial court erred in awarding sole custody of the children to the father, despite her previous role as the primary care giver. The mother argues that James failed to present clear and convincing evidence that sole custody was in the best interest of the children.
The primary consideration in making a child custody determination is always the best interest of the child. LSA-C.C. art. 131; Powell v. Powell, 28,911 (La. App.2d Cir.12/11/96), 684 So.2d 1084; Lundin v. Lundin, 563 So.2d 1273 (La.App. 1st Cir.1990). Pursuant to LSA-C.C. art. 134, in determining the child's best interest, the court shall consider all relevant factors, which may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The factors listed in Article 134 are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. O'Brien v. O'Brien, 30,001 (La.App.2d Cir.12/10/97), 704 So.2d 933. When determining the best interest of the child, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of the evidence presented in each *222 case. McKinley v. McKinley, 25,365 (La. App.2d Cir.1/19/94), 631 So.2d 45.
Generally, in the absence of an agreement, the court shall award custody to the parents jointly, unless custody in one parent is shown by clear and convincing evidence to serve the best interest of the child. LSA-C.C. art. 132. A trial court's determination of child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Powell v. Powell, supra.
In the present case, Dr. Baker testified that he had interviewed the parents and administered psychological tests, including the Wechsler Adult Intelligence Test and the Minnesota Multiphasic Personality Inventory (MMPI). The results showed that both parents were intelligent, with James getting higher scores for non-verbal problem solving skills, and Jeanne receiving higher scores for verbal skills.
Dr. Baker did not diagnose either parent with a mental or emotional disorder. However, he stated that the mother's results suggested a personality problem involving histrionic and narcissistic traits. Baker testified that Jeanne tended to be argumentative, blamed others for her problems and interpreted her needs as identical to those of the children. Baker stated that he did not observe any characteristics of the father to suggest he was acting as an inappropriate parent.
Baker testified that the mother's reported conduct indicated that her behavioral control had deteriorated since their earlier interview. Baker expressed concern that if the children remained with the mother on a continuous basis, they would be at risk of developing emotional problems because of her expressions of anger toward the father. Baker opined that the father appeared to be the more emotionally stable person with the ability to act as the better parent at the present time. However, Baker believed that the children should have contact with their mother.
Ouida Carter, the 87-year-old grandmother of James, testified that he provides food and clothing for the children, who each have their own room in the father's three-bedroom home. Carter stated that James did not seem too rough with his discipline and that the children were affectionate toward him. Carter testified that she assists the father with child care. During the week, he typically leaves for work at 6 a.m. while the children are sleeping. Carter reported that she remains at the house overnight and in the morning she is assisted by James' mother, Judy McIntosh, in feeding, dressing and driving the children to school.
In the afternoon, Carter accompanies the paternal grandmother in picking up the children and is the primary person who prepares the evening meal if James has not arrived home from work. Carter testified that she will continue to care for the children while the father has sole custody, assisted by the mother of James and periodically by his sisters.
James McIntosh testified that he has not experienced any problems caring for the children during his time of sole custody. He stated that his job has somewhat flexible hours so that he can take time off or leave work early in the evening or on weekends if necessary. However, he acknowledged that he needs the help of his grandmother and mother with child care. James stated that this arrangement allows the children to interact with other family members, unlike the situation when they were with their mother.
James acknowledged that he once told Dr. Baker that Jeanne was a good mother, but testified that he no longer believed that statement was true. He denied having trouble with anger control and reported that he had almost completed the anger management classes. James expressed his understanding that the court had ordered him to attend the classes after he admitted that on one occasion, he had "popped" his son twice on the head. James testified that he was concerned about Simpson's *223 criminal record, violent nature and apparent involvement with drugs.
Jeanne testified that previously she had been the primary care-giver of the children, but that her former husband, James, had helped when he was not working. Jeanne stated that as discipline she had "popped," or struck, the children "on their bottoms" occasionally. Jeanne acknowledged that she was aware the court had ordered her not to exercise her visitation in Simpson's presence, but said she disobeyed the order because she had been sick during her pregnancy and Simpson had stayed with her and the children.
The trial testimony demonstrated that Jeanne had denied James visitation with the children and had filed charges of abuse against him with the Child Protection office after the father was granted unsupervised visitation. This complaint was later dismissed for lack of evidence. The psychologist's testimony indicated that the mother had attempted to coach her son about his answers to questions about Simpson's unauthorized presence in her house. Baker opined that placing such stress on the child was not healthy or appropriate.
The evidence shows that the father has arranged for the care of the children by his grandmother and mother while he is working, and that the children have followed a daily routine while in the father's custody. The record does not support the mother's contention that the children are in a "group home" situation while staying with the father. In addition, the evidence demonstrates that the father is the parent who has provided the financial support to supply the children with food, clothing and medical care. There was little or no testimony concerning the children's routine while they were living with their mother.
Based upon this record, we cannot say the trial court was clearly wrong in finding that James McIntosh is the parent more willing to facilitate a continuing relationship between the children and their mother, and that the father is better able to supply the children's material needs and provide a stable living environment with the support of his family. In light of the foregoing factual findings and the psychologist's testimony concerning the emotional stability of each parent, the trial court could reasonably find clear and convincing evidence that sole custody by the father was in the best interest of the children. Consequently, we conclude the trial court did not abuse its discretion in awarding James McIntosh sole custody of the children subject to visitation by the mother. The assignment of error lacks merit. Since the extent of the mother's visitation and the amount of child support awarded were not assigned as error, we have not addressed those issues on appeal.

CONCLUSION
For the foregoing reasons, the trial court's judgment is affirmed. Costs of this appeal are assessed to the appellant, Jeanne McIntosh.
AFFIRMED.