839 So.2d 1070 (2003)
Roger Ray FLANAGAN, Plaintiff-Appellee,
v.
Michelle Beatrice Liner FLANAGAN, Defendant-Appellant.
No. 36,852-CA.
Court of Appeal of Louisiana, Second Circuit.
March 5, 2003.
*1071 Sule Douglas Busari, Scherrineewana Guidry, Esq., for Appellant.
Alan James Norris, for Appellee.
Before BROWN, CARAWAY and PEATROSS, JJ.
*1072 CARAWAY, J.
After five years of primary custody of the children with the father, the mother moved to modify the custody agreement which had resulted from a previously stipulated consent judgment. The trial court ruled that a change in custody was not in the best interests of the children, and the mother appeals. Finding no material change in circumstances that would justify a change in custody, we affirm the trial court's ruling.

Facts
Michelle Liner Flanagan Murdock ("Michelle") and Roger Flanagan ("Roger") were married in Ouachita Parish in 1986. Three children were born of the marriage, Patricia, on February 14, 1988, Ashley, on July 29, 1990, and Jessica, on January 3, 1992. The parents separated in June, 1995, and divorced on March 6, 1996. Roger obtained the divorce on the ground of adultery.
The judgment of divorce placed temporary custody of the minor children with Roger, and ordered home studies conducted for each parent. At that time, both parties lived in mobile homes. Michelle's home study disclosed that she lived with Paul Murdock, was unemployed, and depended on him for financial support. When Michelle and Roger were divorced, Michelle had only completed school through the eighth grade. She now has a G.E.D. Michelle's criminal record consisted of one conviction for shoplifting a bottle of head lice shampoo in 1994. Although Paul Murdock denied having a criminal record, the home study report listed five criminal charges for him between 1988 and 1993.
As a result of Michelle's unemployment and financial dependence on Paul Murdock, the Department of Social Services did not recommend placement of the children with Michelle, noting also that the children were already in Roger's custody. Accordingly, the parties entered a stipulated judgment on May 7, 1996, awarding joint legal custody to Roger and Michelle, and designating Roger as the primary custodial parent. Michelle exercises visitation every other weekend, alternating holidays and during three months in the summer. This custodial arrangement was in place for more than five years when Michelle filed a petition to modify custody. Trial testimony showed that as a whole, the arrangement worked out well for both parents. On one occasion, for a day trip, Michelle, Roger and the girls all visited Vicksburg together.
Michelle's petition alleged that the best interests of the children would be better served by naming her as the custodial parent. She alleged that Roger failed to obtain routine dental and medical check-ups for the girls, failed to provide for their nutritional needs, failed to adequately supervise them, and failed to help them with homework. Michelle is now living in Tallulah and is divorced from Paul Murdock.
While the trial testimony showed that the two older girls performed poorly in school, and each had failed a grade level, their academic problems were also attributable to either unwillingness to do school work (Patricia) or dyslexia (Ashley). Family witnesses who testified at trial largely attributed the problematic nature of Patricia's relationship with her father to her teenager status. Roger admitted that on one occasion, he grabbed Patricia by the hair to restrain her from fighting with her sisters. "I have to put my hand around her neck to show dominance over her. She has a very strong attitude." Patricia's own testimony corroborated this one incident. Ashley and Patricia both testified that they wanted to live with their mother.
At trial, Patricia's teacher, Sonya Dillingham, testified that the girls were well-cared for and well-adjusted, and that Roger *1073 was a good father. Ashley's teacher, Nancy Moore, testified that Roger was "very involved" and "very loving," and was interested in knowing how he could help Ashley perform better in school. Roger's sisters, Debra McGough and Cheryl Flanagan, both testified that the girls were stable, happy, and well-cared for in a good environment. Roger's mother, Harriette, testified that her six grandchildren had frequent contact with each other and with other children in her extended family, who all lived in West Monroe.
Roger testified that he did not have home telephone service and used his cell phone exclusively. In case of an emergency, the girls could use a neighbor's telephone. The girls do not have a regular pediatrician nor did he take them for any dental check-ups between 1996 and 1999. In case of an accident, Roger's sister, a registered nurse, would provide them aid. A month before she turned nine, Ashley accidentally burned her foot with hot grease while cooking on the stove. Roger testified that although it was a blistering burn, he did not take her for medical attention. Michelle took her to the doctor two or three days later, and Ashley was diagnosed with a first or second degree burn. Roger testified that he cleaned the burn and "you just had to let it heal." When Patricia fell off of her bicycle and required stitches to close her knee, Roger removed the stitches himself instead of having them removed at a doctor's office. He testified that "it's very, very easy to do and I saw no danger in doing it."
Michelle testified that since her divorce from Roger, she obtained a G.E.D. and has worked in the same office for three years. She lives in a town about fifty miles from Roger's home in West Monroe, and has resided in the same house for two years. Although Michelle has been active in the girls' lives, and frequently arranges for doctor and dental appointments and vision screening, she does not pay Roger any child support. Roger testified that since she does not pay any support, he expected her to help him with those sorts of things.
Another issue presented at trial was the cluttered condition of Roger's house compared to Michelle's situation and Roger's disinclination for cooking compared to Michelle, who testified that she cooked fresh food every day. In its ruling, the trial court noted that photographs introduced as evidence revealed that Roger's house, "at times, resembles a pigsty." Nevertheless, the trial court observed that Roger "has done a very good job of rearing the children." Finally, the trial court concluded that although both parents were fit to have custody, there was no need to alter the current custodial situation. Accordingly, it denied Michelle's petition for sole custody. It is from this judgment that Michelle appeals.

Discussion
The paramount consideration in any determination of child custody is the best interest of the child. Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731; Hoskins v. Hoskins, 36,031 (La.App.2d Cir.4/5/02), 814 So.2d 773; Masters v. Masters, 33,438 (La.App.2d Cir.4/5/00), 756 So.2d 1196; writ denied, 01-3096 (La.12/7/01), 803 So.2d 975. In cases where the original custody decree is a stipulated judgment and the rule of Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986) is inapplicable, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Evans, supra; Shaw v. Shaw, 30,613 (La. App.2d Cir.6/24/98), 714 So.2d 906; writ denied, 98-2414 (La.11/20/98), 729 So.2d 556; writ denied, 98-2426 (La.11/20/98), 729 So.2d 558.
*1074 La. C.C. art. 134[1] provides a non-exclusive list of factors which the trial court may consider with all other relevant factors for the determination of the best interests of the child. The consideration of all relevant factors under Article 134 should be followed in actions to change custody, as well as in those to fix custody initially. La. C.C. art. 134, comment (d).
The court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Hoskins, supra. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Id.
A court of appeal may not set aside the trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State through Dep't of Transp. & Development, 617 So.2d 880 (La.1993); Major v. Major, 02-2131 (La.App. 1st Cir.2/14/03), 2003 WL 343029, ___ So.2d ___. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness' testimony must be given great deference by the appellate court. A trial court's determination of custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of that discretion. Rosell v. ESCO, 549 So.2d 840 (La. 1989); Major, supra; Lee v. Lee, 34,025 (La.App.2d Cir.8/25/00), 766 So.2d 723; writ denied, 00-2680 (La.11/13/00), 774 So.2d 150.
Michelle's rule generally asserts two grounds as the material changes of circumstances. She first asserts that her educational and economic circumstances have improved since the entry of the stipulated judgment. Secondly, she alleges that Roger's care for meeting the physical and *1075 emotional needs of the children has become deficient.
This court has held that the improvement of the non-domiciliary parent's educational and economic circumstances is not a material change of circumstance which may justify a change in the previous custody arrangement. Shaw, supra; Bailey v. Bailey, 527 So.2d 1030 (La.App. 2d Cir. 1988), writ denied, 528 So.2d 565 (La. 1988). On the other hand, a persistent failure on the part of the domiciliary parent to provide for the physical and emotional needs of his children would present a material change of circumstances. In this case, the trial court did not find that Michelle proved that Roger had failed in those vital parental duties. From our review of the record, we agree with the trial court.
Michelle's case against Roger was based upon certain isolated incidents that arguably may not have been the best course of action on Roger's part for attending to his daughters' needs. Nevertheless, the children's medical and dental needs are being met, and Roger's reliance upon Michelle for aid in those matters is appropriate. Cf. La. R.S. 9:315.4 and 315.5. Michelle is now employed, yet Roger has sought no child support payments from her. Likewise, while Patricia has had difficulties in school, the children's teachers testified that Roger did not neglect his children's educational needs. The youngest daughter, Jessica, is performing well in school. Finally, the family home life, as revealed by the testimony of other persons and the photos of Roger and the children, was not shown to be detrimental to the children's well being and appears to be wholesome. Accordingly, we do not find that Michelle met her burden of proof in demonstrating that a material change of circumstance has occurred.
In conclusion, the trial court's written ruling also stressed the overriding fact that Roger has now maintained the existing custodial home for over six years. The children's best interest factors under Article 134 regarding the permanence of the existing custodial home as the family unit and the desirability of maintaining continuity of that environment were most important in this case, and we affirm the trial court's ruling.
Costs of appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] La. C.C. art. 134 provides: The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:

(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.