895 So.2d 773 (2005)
In the Interest of the Minor Children, S.L.G. and K.A.G.
No. 39,704-CA.
Court of Appeal of Louisiana, Second Circuit.
March 2, 2005.
*775 Michael L. Glass, Alexandria, for Appellant Connie Hammett.
McKeithen & Lewellyan by Donald D. McKeithen, Jr., for Appellant Charles Hammett.
Laura J. Burkett, for Appellees Jerry & Tabitha Bazan, Theresa & Wayne Lord.
Before BROWN, STEWART and LOLLEY, JJ.
*774 LOLLEY, J.
Charles and Connie Hammett appeal the judgment of the Fifth Judicial District Court, Franklin Parish, Louisiana, awarding tutorship and custody of the two minor children, Kobe and Shadye Graham, to Tabitha and Jeronimo Bazan. For the following reasons we affirm the trial court's judgment.

FACTS
At issue in this appeal is the tutorship and custody of two minor children  Kobe Addison Graham, whose date of birth is July 13, 2000, and Shadye Leigh Graham, whose date of birth is June 13, 2002. The parents of the children, Stacey Graham and Tessia Cureington ("Tess"), were unmarried and are now deceased.[1]
Stacey was the son of Connie Hammett and Lennie Graham, who are divorced. Connie married Charles Hammett in 1995 (her second marriage and his fourth), and they are the original plaintiffs in this tutorship/custody proceeding. Charles and Connie live in their home in Richland Parish, Louisiana, near Rayville. Stacey had numerous other relatives in the vicinity, and as the trial court noted in the reasons for judgment, his grandfather was sheriff of Richland Parish for many years.
*776 Stacey was 17 years old when he quit high school and moved in with Tess, also 17, and her mother, Terry Cureington. Nine months later, their son, Kobe, was born. A month after Kobe was born, Stacey's and Tess' nomadic lifestyle began. During some of that time, they lived periodically with Connie and Charles; however, the record reflects that between this time and their deaths, these young parents lived in a minimum of nine different places. In June 2002, Tess gave birth to the couple's daughter, Shadye. On December 22, 2002, Tess and Shadye were living with a friend of Tess', and Kobe was living primarily with Stacey in a travel-trailer. On that afternoon, Stacey went to visit Tess. He murdered her and then killed himself, leaving Kobe and Shadye orphans.
Immediately after the murder/suicide, the care of the children switched between the families of Stacey and Tess. Terry obtained an ex parte custody order and then deposited the children with Tabitha and Jeronimo ("Jerry") in Dallas, Texas. Tabitha Bazan was Tess' older half-sister and Terry's oldest daughter. However, at a very young age, Tabitha was adopted and raised by her grandparents, who were deceased before any of the events leading up to this litigation even occurred. Tabitha's husband, Jerry, is a naturalized United States citizen, born in Mexico but raised in South Texas.
Connie and Charles filed a motion to vacate Terry's custody order and sought custody of the children themselves. They later amended their motion to a tutorship proceeding.[2] Trial was held over numerous and interrupted days in 2004, during which time the parties shared physical custody of the children. Ultimately, judgment was rendered in favor of Tabitha and Jerry, naming them tutors for the children and giving them primary custody. Connie and Charles were granted limited visitation with the children. This appeal by the Hammetts ensued.

DISCUSSION
Initially, we note that this case is one addressing the tutorship of Kobe and Shadye, a determination which is based on their best interest. Thus, the applicable law for consideration are those codal articles, statutory provisions, and jurisprudence that address tutorship and the best interest of the children. The statutory provision cited by the appellants in their first assignment of error, i.e., La. R.S. 9:355.12(A), is inapplicable to this scenario and will not be discussed. That particular statute relates to the relocation of children when it is contested by parents or custodians. Relocation in this case is only pertinent as a factor in determining the best interest of the children. So considering, we will address the appellants' argument that the trial court erred in failing to consider the best interest of the children by naming Tabitha and Jerry as tutors and granting them primary custody.
There are four kinds of tutorship: (1) tutorship by nature; (2) tutorship by will; (3) tutorship by the effect of the law; and (4) tutorship by the appointment of the judge. La. C.C. art. 247. When a tutor has not been appointed to the minor by the parent dying last, then the court, considering the best interest of the minor, shall appoint a tutor from among the qualified ascendants in the direct line, collaterals by blood within the third degree, and the surviving spouse of the parent dying last. *777 La. C.C. art. 263. Necessarily, the tutorship of the minor children also involves the responsibility of their custody and care. See La. C.C.P. art. 4261. Thus, in determining the custody of Kobe and Shadye it is necessary to determine their best interest as defined under La. C.C. art. 134, which states:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. Flanagan v. Flanagan, 36,852 (La.App.2d Cir.03/05/03), 839 So.2d 1070. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Id. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Id.
A court of appeal may not set aside the trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State through Dep't of Transp. & Development, 617 So.2d 880 (La.1993); Flanagan, supra. If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Id. Furthermore, when factual findings are based on the credibility of witnesses, the fact finder's decision to credit a witness' testimony must be given great deference by the appellate court. A trial court's determination of custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of that discretion. Rosell v. ESCO, 549 So.2d 840 (La.1989); Flanagan, supra.
As stated, the trial court awarded the permanent tutorship and primary custody of Kobe and Shadye to Tabitha and Jerry. The appellants correctly note that the trial court did not list the various *778 art. 134 factors in its reasons for judgment. However, this omission by the trial court is not in and of itself error, because the jurisprudence clearly holds that such a mechanical analysis of art. 134 is unnecessary. Moreover, simply because the trial court did not analyze each factor in its reasons for judgment does not necessarily indicate that it did not consider the factors. Other than the factor regarding a child's preference (which would obviously be inapplicable in this case considering the young ages of the children), the trial court heard evidence pertaining to all the art. 134 factors. Having reviewed the record in its entirety, we cannot conclude that a mechanical evaluation of each and every of the listed factors would have weighed in favor of the Hammetts. In fact, considering the entire record and applying the evidence to the factors enumerated in art. 134, it is obvious that the trial court made the proper determination in naming the Bazans as Kobe's and Shadye's tutors and primary custodians.
The appellants characterize the trial court's decision in favor of the Bazans as being one based solely on wealth and education. Whereas these two factors were actually acknowledged by the trial court (and are both notably legitimate factors for the consideration of a child's best interest), the record clearly shows that the Bazans demonstrated their strengths as to the other art. 134 factors as well.
Two factors important in determining the best interest of Kobe and Shadye are the moral fitness and parental abilities demonstrated by Tabitha and Jerry. Regarding Tabitha, the record shows her to be a motivated and organized young woman. Particularly impressive is the drive and determination shown by Tabitha, who, raised in similar circumstances as her younger sister, Tess, was able to obtain a college degree and then find success in the business world. The record reflects that Tabitha took this same energy and directed it toward Kobe and Shadye once she was charged with their care. Soon after being entrusted to keep Kobe and Shadye, Tabitha used the management skills honed from her education and profession to manage and stabilize the lives of Kobe and Shadye. She saw to it that they received the proper medical and dental attention appropriate for children their age. Concerned about what she perceived to be a delay in Kobe's language skills, she had him assessed by a speech pathologist. Tabitha researched education for the children, with the immediate hope of enrolling Kobe in a Head Start program. Finally, Tabitha sacrificed her lucrative career to stay home with Kobe and Shadye, something she deemed important to provide stability in their lives. Clearly, this young woman was prepared to parent, not just baby-sit, these two children who had obviously never been truly parented before despite the presence of family in the area.
Jerry's testimony, even on the cold record, clearly reflected his moral fitness to parent Kobe and Shadye, as well as the love he has for the children. Jerry, a naturalized American citizen, college graduate, and practicing Catholic, was raised in a stable home by parents married only to each other until his mother's death. Actually, of all the witnesses at this trial, Jerry was evidently the only one raised in a traditional, stable family environment  truly a person to make a significant impact on these two young children. In fact, when questioned as to why he and Tabitha wanted to adopt Kobe and Shadye, he responded:
These kids need a stable home, they have been passed along way too much and there's been people sitting there just looking at these kids being passed along and have done nothing about it, *779 and I think it's about time that somebody steps up to the plate and gives these kids a proper home, with stability, ... with religion, spiritual guidance, everything that a parent should give a child and that a child is entitled to.
Obviously, the trial court was impressed by his honesty, as well as his work ethic and responsible attitude towards raising these children, something he himself experienced from his own family upbringing. From this record, it is evident the trial court was not in error in finding him a suitable undertutor and custodian of Kobe and Shadye.
The Hammetts further claim the Bazans intend to disassociate the children from them, as evidenced by Jerry's and Tabitha's desire to adopt the children. However, Jerry and Tabitha both stated their adamant intent to continue the children's relationship with the Hammetts and their older half-sister, Makayla, even when the adoption is finalized. Obviously, the trial court believed them, which determination was within its reasonable discretion.
Additionally, the trial court was not in error in considering the tragic circumstances of Tess' murder and Stacey's suicide. The trial court noted that were Kobe and Shadye raised in the vicinity of this small, rural community, they most certainly would be constantly associated with the tragedy of their parents' deaths. The trial court recognized that even the Hammetts' psychologist saw the potential harm to the children if they were periodically reminded of their mother's murder and father's suicide. Such considerations by the trial court were not unreasonable and certainly were not in error. For instance, in Matter of Custody of Booty, 95-0828 (La.App. 1st Cir.11/09/95), 665 So.2d 444, 448, the minor child was relocated to another parish from the one in which the child's father murdered his mother and then committed suicide. There, the trial court agreed that the child's move to "... a stable, traditional, family environment away from the site of the tragic deaths" would be in the child's best interest. We consider this to be a proper consideration in this case as well.
We agree with the trial court's conclusion that Kobe's and Shadye's "... best interest will require an approach and dedication to education and moral development substantially different from that of [Tess and Stacey]." We further agree with the trial court's assessment that "... those in close association with Stacy and Tess [i.e., the appellants] should have recognized that this was a floundering relationship with an uncertain future." Life for Kobe and Shadye with the Bazans offers them an opportunity for lives dramatically different from those of their parents, Tess and Stacey. There is no doubt that the Hammetts love their grandchildren; however, neither Kobe's and Shadye's best interest, nor their future lives, are best served by naming the Hammetts as their tutors and custodians. From the record before us, it is clear that the best interests of the children are served by naming Tabitha and Jerry Bazan the tutors and primary custodians of Kobe and Shadye.[3]
As to the visitation award by the trial court, the Hammetts argue that the trial court erred in allowing them only one month of visitation in June, which summertime visitation they would like extended. Notably, the determination of the trial judge will not be disturbed absent a clear showing of abuse of discretion. *780 Blackshire v. Washington, 39,028 (La.App.2d Cir.08/18/04), 880 So.2d 988. Here, we do not believe the trial court abused its discretion in awarding the Hammetts one month of summer visitation with Kobe and Shadye, in light of the other visitation awarded. The parties did concede at oral arguments that the visitation schedule set by the trial court was inexact regarding the division of the holidays; however, the parties should be able to work out a specific schedule between themselves.[4] As the children become older and begin their schooling, this schedule will likely need change, as it also will if and when the Bazans adopt the children. So considering, we conclude this assignment of error to be without merit.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court which awarded tutorship and primary custody of the minor children, Kobe and Shadye Graham to Tabitha and Jerry Bazan. Costs of this appeal are to be assessed to Charles and Connie Hammett.
AFFIRMED.
NOTES
[1] Stacey also had a daughter born in 1998, Makayla, with another woman. That child is not the subject of these proceedings.
[2] Originally, Terry was named defendant in this matter. Tabitha and Jerry later intervened, long with Terry's other daughter, Theresa and her husband, Wayne Lord. Terry, Theresa, and Wayne later abandoned their effort to be named tutors and custodians of the children.
[3] The trial court awarded "primary" custody to the Bazans, which we take to mean sole custody.
[4] Although the parties recognized that the visitation order by the trial court was imprecise, neither party raised it as an assignment of error on appeal; thus, we will not set a more specific visitation schedule in this opinion. However, we note that the holidays of Christmas, Easter, and Thanksgiving are to be equally shared by the parties. Considering that the Bazans regularly practice their religion and that Christmas and Easter are religious holidays, it would seem reasonable that the actual respective day(s) upon which those religious holidays are observed be spent with the Bazans. The parties should then fix the equal division with that consideration.