992 So.2d 568 (2008)
Christopher B. KEES, Sr.
v.
Jannie Anderson KEES.
Jannie Kees
v.
Christopher Kees.
Nos. 2008-CA-0124, 2008-CA-0125.
Court of Appeal of Louisiana, Fourth Circuit.
August 13, 2008.
Rebecca J. King, Rebecca J. King & Associates, APLC, Atlanta, GA, for Christopher B. Kees, Sr.
Roy M. Bowes, Joaquin Shepherd, Joshua Mathews, Roy M. Bowes & Associates, Gretna, LA, for Jannie Anderson Kees.
(Court composed of Judge CHARLES R. JONES, Judge JAMES F. McKAY, III, and Judge DAVID S. GORBATY).
CHARLES R. JONES, Judge.
The appellant, Mrs. Jannie Anderson-Kees, appeals the district court judgment that awarded joint custody of her two minor children to both she and her former spouse; awarded domiciliary custody of the minor children to her former spouse; granted Ms. Anderson-Kees scheduled visitation pursuant to a detailed court order; and finally, transferred venue to Calcasieu Parish. We affirm.
Ms. Anderson-Kees and Mr. Christopher Kees, the appellee, were married on March 31, 2001, in New Orleans, Louisiana. *569 Two sons were born of the union: Christopher B. Kees Jr., born July 9, 2001; and Jaden Kees, born July 28, 2004. The child Christopher, Jr., was diagnosed with autism in December 2005.
The marriage experienced its share of trouble. In June of 2001, police were called to the Kees home as a result of an incident of domestic violence in which Mr. Kees bit the nose of Ms. Anderson-Kees during an argument. Although some of the marital difficulty subsided after the birth of the children, it did not last for long. The parties frequently separated due to domestic disputes, and Mr. Kees would move in with his parents. During these periods, Ms. Anderson-Kees was the primary caretaker of the children.
On May 3, 2005, a period of separation, Ms. Anderson-Kees made arrangements with Mr. Kees to pick up the children from his parents' home. When Ms. Anderson-Kees arrived, neither Mr. Kees nor the children were there. Ms. Anderson-Kees waited for over an hour and eventually called the police. However, before the police arrived, Mr. Kees returned with the one of the children, Christopher, Jr., but he would not relinquish him. Mr. Kees and Ms. Anderson-Kees exchanged some words and physically struggled over Christopher, Jr., but Mr. Kees managed to take the child into his parents' home and also telephoned for the police. When the police arrived at the house, they informed Ms. Anderson-Kees that since no court order was in place they could not help her.
On May 4, 2005, Mr. Kees filed a petition for protection from abuse. Therein, he represented that "[Ms. Anderson-Kees] appeared at my parents [sic] house unannounced; she grabbed and pulled myself and my child. After freeing us from her holed [sic], she tried to force herself in to the resident [sic]. The N.O. Police had to come out and restore order." Mr. Kees was granted a temporary restraining order which forbade Ms. Anderson-Kees from contact with the children.
After Ms. Anderson-Kees was served on May 10, 2005, she filed an emergency petition for child custody and visitation rights. Both Ms. Anderson-Kees' emergency petition and Mr. Kees' petition for protection were consolidated on May 25, 2005. Both matters were heard on June 3, 2005.
At the pre-trial conference, the district court went on the record stating that the allegations in Mr. Kees's petition for protection did not rise to the level of a protective order, but ordered an injunction against Ms. Anderson-Kees to stay away from Mr. Kees' parents' home. The district court ordered that the parties take part in a custody evaluation with Family Services of Greater New Orleans. Additionally, upon the request of Mr. Kees, paternity testing was also ordered. The district court also ordered that Ms. Anderson-Kees have visitation every other weekend and every Wednesday, pending the custody evaluation.
On June 14, 2005, an order was signed that gave Mr. Kees interim primary domiciliary custody, ordering paternity testing, ordering the custody evaluations, and ordering an injunction.
The order of injunction, specifically prevented Ms. Anderson-Kees from having contact with Mr. Kees other than in emergency situations, ordered her not to go within 100 yards of his residence, not to contact his place of employment, and not to damage any of the belongings of Mr. Kees.
On the same date, Mr. Kees also filed for divorce pursuant to Louisiana Civil Code article 102, in forma pauperis against Ms. Anderson-Kees. Additionally, the results of the paternity test were received *570 and proved that both Christopher Jr., and Jaden were fathered by Mr. Kees.
In late August 2005, the matrimonial domicile of Mr. Kees and Ms. Anderson-Kees was destroyed by Hurricane Katrina. Mr. Kees evacuated to Lake Charles, Louisiana, while Ms. Anderson-Kees evacuated to Beaumont, Texas. Due to the parties' relocation and the inability of Family Services of Greater New Orleans to locate Mr. Kees, the custody evaluations were discontinued. Subsequently, after Mr. Kees returned to Lake Charles after evacuating a second time due to Hurricane Rita, visitation resumed, but due to the distance between them, Ms. Anderson-Kees was not able to exercise her Wednesday visitation schedule.
In March and June of 2006, Ms. Anderson-Kees filed rules to show cause why divorce should not be granted, but no hearings occurred. Additionally, Mrs. Anderson-Kees tried to have venue changed to Lake Charles, Louisiana due to inconvenience, but to no avail.
On January 23, 2007, Mr. Kees filed a rule to show cause why the divorce should not be granted. A hearing was set for March 13, 2007. After a pretrial conference, a judgment of divorce was signed on March 19, 2007. The parties were also ordered to complete their custody evaluations. Ms. Anderson-Kees' motion for custody was continued pending their custody evaluations.
After completing the custody evaluations in June 2007, Ms. Anderson-Kees once again filed a motion for permanent custody. The matter was set for August 14, 2007. However, the custody evaluation report was not received until August 13, 2007. The detailed custody report recommended that joint custody continue, but that Ms. Anderson-Kees be named primary domiciliary parent.
On the scheduled hearing date, Mr. Kees requested that the permanent custody hearing be reset for October 4, 2007. It was further ordered that Ms. Anderson-Kees get two uninterrupted weeks of visitation pending the hearing.
The trial regarding permanent custody took place on October 4 and 5, 2007. After the hearing, the district court ruled in open court that joint custody continue with Mr. Kees, being named as the domiciliary parent. Subsequently, on November 15, 2007, the district court signed a judgment that: awarded joint custody of the two minor children to both her Mrs. Anderson-Kees and Mr. Kees; awarded domiciliary custody of the minor children to Mr. Kees; granted Ms. Anderson-Kees scheduled visitation rights, pursuant to detailed court order; and finally, transferred venue to Calcasieu Parish. The district court also ordered that Mr. Kees keep Ms. Anderson-Kees informed as to the children's medical information and school activities; that Mr. Kees and Ms. Anderson-Kees refrain from making disparaging comments about the other in front of their children; and that Ms. Anderson-Kees have telephone access with the children on Tuesdays and Thursdays. As for the specifics concerning the visitation schedule:
 Ms. Anderson-Kees was awarded visitation the week of Thanksgiving of 2007 and all subsequent odd-numbered years. Mr. Kees was awarded visitation with the children during Thanksgiving 2008, and all subsequent even years;
 Mr. Kees was awarded visitation with the children the week of Christmas 2007 and all subsequent odd-numbered years, while Ms. Anderson-Kees was awarded visitation with the children the week of Christmas 2008 and all subsequent even years.

*571  Ms. Anderson-Kees was awarded visitation the week of New Years Eve of 2008 and all subsequent even-numbered years. Mr. Kees was awarded visitation with the children the week of New Years Eve of 2008, and all subsequent odd years;
 The Kees were ordered to exchange the children on Christmas Day to end the Christmas week visitation and commence the New Year's week visitation.
 Mr. Kees was awarded visitation with the children Spring Break/Easter 2008 and all subsequent even-numbered years. Ms. Anderson-Kees shall have visitation with the children Spring Break/Easter 2009 and all subsequent odd years.
 Ms. Anderson-Kees was awarded visitation with the minor children the months of June and July each summer. During her summer visitation, Mr. Kees would have visitation with the children during one weekend in June and one weekend in July.
 Mr. Kees was awarded visitation with the minor children during the month of August each summer. During Mr. Kees' summer visitation, Ms. Anderson-Kees was awarded one weekend of visitation during August. Ms. Anderson-Kees would resume her every other weekend visitation schedule with the children in September.
On November 5, 2007, Ms. Anderson-Kees filed the instant appeal seeking modification and review of the judgment dictated on October 5, 2007 and later on November 15, 2007. She also asserted that the district court abused its discretion by naming Mr. Kees as the domiciliary parent. Specifically, she asserts two assignments of error: (1) the district court abused its discretion by finding that La. Civ.Code art. 134 factors for determining child custody do not weigh in any party's favor and that awarding primary domiciliary custody to Mr. Kees, when the evidence showed that he has a history of violence, has shown an ability to not effectively co-parent, has a rigorous work schedule, and "does not offer the ability to offer interactions with a close sibling that [Ms. Anderson-Kees] does;"[1] and (2) the district court abused its discretion by ignoring and disregarding the opinion of the court-appointed child custody evaluator, when the evaluator's opinion was the only expert opinion in the record and is based upon "correct" reasoning.

STANDARD OF REVIEW
In McKenzie v. Cuccia, XXXX-XXXX, p. 3-4 (La.App. 4 Cir. 6/23/04), 879 So.2d 335, 338, this Court discussed the standard of review in child custody matters, stating:
An appellate court may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). The trial court's determination in establishing or modifying custody is entitled to great weight and will not be disturbed by an appellate court absent a clear showing of abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La.1988); Gill v. Dufrene, 97-0777 (La.App. 1 Cir.12/29/97), 706 So.2d 518, 521.
When the factual findings are based on the credibility of witness testimony, the appellate court must give great deference to the fact finder's decision to credit witness testimony. Mire v. Mire, XXXX-XXXX, p. 3 *572 (La.App. 4 Cir. 3/24/99), 734 So.2d 751, 753, citing Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The trial judge is in the best position to ascertain the best interest of the child given each unique set of circumstances. Id., XXXX-XXXX, p. 3, 734 So.2d 751, 753.
In her first assignment of error, Ms. Anderson-Kees argues that the district court abused its discretion in finding that La. Civ.Code art. 134, factors for determining child custody, do not weigh in any party's favor and in awarding primary domiciliary custody to Mr. Kees, when the evidence showed that he has a history of violence, has shown an ability to not effectively co-parent, has a rigorous work schedule, and does not facilitate by offering Ms. Anderson-Kees interactions with the children.
Louisiana Civ.Code, art. 134, titled, Factors in determining child's best interest, provides:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
In Richardson v. Richardson, XXXX-XXXX (La.App. 4 Cir. 12/28/07), 974 So.2d 761, this Court determined:
[We are] not bound to make a mechanical evaluation of all of the statutory factors listed in article 134, but should decide each case on its own facts in light of those factors. Flanagan v. Flanagan, 36,852, p. 6 (La.App. 2 Cir. 3/5/03), 839 So.2d 1070, 1074. The court is not bound to give more weight to one factor over another; when determining the best interest of the child; the factors must be balanced and weighed in view of the evidence presented. See Hoskins v. Hoskins, 36,031 (La.App. 2 Cir. 4/5/02), 814 So.2d 773. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. Sawyer v. Sawyer, 35,583, p. 3 (La.App. 2 Cir. 11/2/01), 799 So.2d 1226, 1229-30.
Id., XXXX-XXXX, p. 20, 974 So.2d at 775.
In the instant matter, Ms. Anderson-Kees asserts that although the district *573 court in oral reasons, enunciated the twelve factors elicited in La. Civ.Code art. 134, it concluded that the factors were neutral in regard to Mr. Kees and Ms. Anderson-Kees. Ms. Anderson-Kees asserts that reasons stated by the district court were vague and "were largely geared toward defending the actions of Mr. Kees," rather than stating why awarding custody to Mr. Kees was in the best interests of the children.
Ms. Anderson-Kees also argues that the district court:
 Erred by misinterpreting that she took the couple's divorce personally and attempted to maintain a relationship with Mr. Kees, albeit in a harassing way;
 Erred in finding that Ms. Anderson-Kees did not come forward with any proof that she has plans in place for the children;
 Erred in concluding that she, despite having a child diagnosed with autism, did not educate herself about her son's diagnosis and was not adequately prepared to deal with Christopher Jr.'s, condition.
She asserts that because of this findings, the district court's judgment was unreasonable.
In a recent case, Lannes v. Lannes, XXXX-XXXX, (La.App. 4 Cir. 2/13/08), 977 So.2d 1119, a mother appealed a district court order which granted joint custody of two minor children and setting specific visitations with father. On appeal, this Court, held, inter alia:
The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Evans v. Lungrin, [97-0541 (La.2/6/98), 708 So.2d 731] Id., Rutledge v. Rutledge, 41,792 (La.App.2d Cir.12/13/06), 945 So.2d 307. The best interest of the child test under Articles 131 and 134 is a fact-intensive inquiry requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case. Rutledge, supra; Cook v. Cook, 40,572 (La. App.2d Cir.1/25/06), 920 So.2d 981. Each custody case must be viewed within its own peculiar set of facts. Cook, supra.

Id., XXXX-XXXX, p. 4, 977 So.2d at 1121.
Ms. Anderson-Kees asserts that Mr. Kees' unwillingness to share custody was further evidenced by the fact that he filed petition for a restraining order on the next day, following the disturbance at his parents' home. Ms. Anderson-Kees asserts that the restraining order interfered with her parental rights in that it kept interim custody with Mr. Kees, while the custody evaluator's report was being completed. She also contends that after Hurricane Katrina forced them to relocate and devastated their home, Mr. Kees made no effort to continue the court ordered custody evaluation process.
Ms. Anderson-Kees asserts that Mr. Kees deliberately excludes her from involvement with the children. She reports that her contact with the children is often limited in that Mr. Kees often refuses to communicate with her regarding issues related to school, special occasions, and where the children are living. She recalls that Mr. Kees notified her that their eldest son, Christopher, Jr., was diagnosed with autism via text message. Additionally, Mr. Kees also keeps a separate cell phone specifically for her phone calls. She also asserts that Mr. Kees has made disparaging statements to her in which he dismisses her role as the children's mother. She also contends that he has told her that she does not exist and that she is a figment of *574 his imagination and that if anybody asked about her, she died in Hurricane Katrina.
Mr. Kees does not deny doing any of the acts Ms. Anderson-Kees accuses him of. He notes that his unwillingness to have a relationship with Ms. Anderson-Kees is because she is bothersome to him and that she is still in love with him. Mr. Kees admits that he puts his own feelings toward Ms. Anderson-Kees above the needs of the children.
Although Ms. Anderson-Kees asserts that at least two of the twelve factors elicited in La. Civ.Code art. 134, particularly factor # 10, "[t]he willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party," weighed strongly in her favor, the district court erred in not awarding custody to her. Ms. Anderson-Kees points to the fact that Mr. Kees has not allowed her to spend time with the children and has repeatedly shown that he is unwilling to facilitate the children's relationship with her, and has refused to return the children from an agreed visitation, despite the fact that he admitted during his testimony that he was aware that Ms. Anderson-Kees was scheduled to pick the boys up on May 3, 2005.
In support of this argument, she cites two Second Circuit cases: Duvalle v. Duvalle, 27,271 (La.App. 2 Cir. 8/23/95), 660 So.2d 152 and McIntosh v. McIntosh, 33,908 (La.App. 2 Cir. 8/31/00), 768 So.2d 219.
In Duvalle, a father, Mr. Duvalle, filed a petition requesting a modification of a joint custody decree after an uncontested divorce decree awarded the custody of his children to their mother. The district court denied the Mr. Duvalle's request for a modification and maintained the children's mother as the domiciliary custodian and allowed Mr. Duvalle visitation for three weeks during the summer and alternate major holidays. Mr. Duvalle appealed. The Second Circuit held that: (1) the district court's determination that maintaining custody with the mother was in best interests of the children was supported by the evidence; Id., 27,271, p. 5, 660 So.2d at 156; (2) the granting of visitation was not an abuse of discretion by the district court; Id., p. 8, 660 So.2d at 157; but (3) the matter was remanded for the formulation and implementation of a joint custody plan. Id.
In McIntosh, a former husband filed a motion to amend a child custody order. The district court awarded custody to the former husband, and the former wife appealed. The Second Circuit held that granting the former husband sole child custody was in the children's best interest.
However, both Duvalle and McIntosh are distinguishable for several reasons. While Ms. Anderson-Kees suggests that Mr. Kees is not a willing facilitator and that his May 4, 2005, petition for a restraining order due to the May 3, 2005 incident supports her contention that the current domiciliary custody should be changed, the Second Circuit, in Duvalle, did not make the determination that Mrs. Duvalle was the more willing facilitator solely on the basis that the father had interfered with her custodial rights. The court also weighed the matter of "permanence" as related to the children's relationships in their respective environment, as follows:
Another important factor to be considered when determining the best interest of children for purposes of awarding custody is stability or permanence, as a family unit, of the custodial home. LSA-C.C. Art. 134(5). Here, Lauryn has established a close emotional bond with her maternal grandparents and with her mother. Mrs. Duvalle is more likely to keep the bond between Lauryn, the grandparents, and Mr. Duvalle intact. *575 As far as separating Reginald from his established family unit, we note that he has spent a considerable amount of time bonding with both parents. Further, Reginald was young, two years old at the time of the hearing on this rule, and a transition between family units will not be extremely complicated for him. See Connelly v. Connelly, 94-0527 (La.App. 1st Cir.10/07/94), 644 So.2d 789, 794.
Duvalle, 27-271, p. 7, 660 So.2d at 157.
In McIntosh, the Second Circuit, again, considered other factors in its decision to continue custody with the father, including trial testimony that the mother [Ms. McIntosh] had denied the father visitation with the children and had filed charges of abuse against him with the Child Protection Services after the father was granted unsupervised visitation. 33,908, p. 6, 768 So.2d at 223. The court also considered the psychologist's testimony which indicated that the mother had attempted to coach her son about his answers to questions. Id. The psychologist concluded that placing such stress on the child was neither healthy nor appropriate. Id.
Conversely, the Second Circuit also concluded that the evidence established that the father arranged for the care of the children by his grandmother and mother while he was at work and the children had a daily routine while in their father's custody, despite the mother's assertion that the children were in a group home situation. Id. The court also opined, "the evidence demonstrates that the father is the parent who has provided the financial support to supply the children with food, clothing and medical care. There was little or no testimony concerning the children's routine while they were living with their mother." Id.
Based upon her allegations of Mr. Kees' alienation of the children's affection, Ms. Anderson-Kees asserts that the district court abused its discretion in not finding that custody weighed in her favor. She asserts that the only evidence that the district court relied upon was Mr. Kees' allegations of harassment by her in which she made phone calls to him in the days after his refusal to return the children and his filing a petition for the temporary restraining order.
Ms. Anderson-Kees also asserts that Mr. Kees is prone to outbursts of violence. She asserts that in June 2001, Mr. Kees bit her nose. The police were called in response to the domestic disturbance. While Mr. Kees admitted that he was involved in the domestic disturbance, Ms. Anderson-Kees asserted that medical records confirm that she was treated for a human bite to the nose.
Mr. Kees alleges that his wife was mutually combative with him on previous occasions. However, he notes that the these instances of mutual combat were not corroborated by any evidence, and he notes that Ms. Anderson-Kees only denies engaging in any such conduct by responding that she acted in self-defense.
Ms. Ginger Parsons, the court-appointed custody evaluator, addressed the past acts of domestic abuse by Mr. Kees as follows:
The past history of physical and verbal altercations between [Mr. Kees and Mrs. Anderson-Kees] appears to be a conflict generated mutually by the two parties and founded in their differing expectations of the marriage. Neither appears to have any significant history of violence in other situations/settings. While I do not think that these altercations indicate any physical threat towards the children, it is my opinion that the children's emotional health and well-being is threatened both by the continuing recurrence of the conflict and by the *576 exclusion of the mother from their lives in an attempt to prevent this conflict. Both parents must make a concerted effort to shield the children from the conflict between them, including refraining from ever speaking ill of the other parent in the children's presence. Both parents will have to find a way to communicate frequently and peacefully about the needs of their children and any disagreements in this area. Neither child will be well served if these parents cannot find some workable resolution to this situation.
Based on Ms. Parson's assessment, Mr. Kees' past incidents of domestic abuse toward Ms. Anderson-Kees does not prove a likelihood that Mr. Kees would exhibit violence towards the children. In the instant matter, Ms. Anderson-Kees objects to the award of custody, but she fails to establish that the district court abused its discretion in awarding domiciliary custody to Mr. Kees. Although Ms. Anderson-Kees has shown that she and Mr. Kees have had a tumultuous relationship, there is no indication that the children's best interest are not being served in the current placement.
The record indicates that Mr. Kees was awarded interim custody during the custody evaluation. After the divorce decree was issued, there was no custody order in place, as is required pursuant to La. R.S. 9:335,[2] which would have assisted the parties in their efforts to effectively co-parent their children, and would have also managed the parents' time allocation and schedules affecting the children, thereby avoiding conflicts such as those which occurred on May 3, 2005.
In McKenzie v. Cuccia, XXXX-XXXX, (La.App. 4 Cir. 6/23/04), 879 So.2d 335, we determined that:
Once joint custody has been found to be in the best interest of the child, a joint custody implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents, and to the extent it is feasible and in the best interest of the *577 child, physical custody of the children should be shared equally. La.Rev.Stat. 9:335. The trial court's finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody. Collins v. Collins, 36,629 (La.App. 2 Cir. 10/23/02), 830 So.2d 448. Substantial time rather than strict equality of time is mandated by the legislative scheme providing for joint custody of children. Nichols v. Nichols, 32,219 (La.App. 2 Cir. 9/22/99), 747 So.2d 120. Every child custody case is to be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision that is in the best interest of the child. Id.

Id., XXXX-XXXX pp. 4-5, 879 So.2d at 338-339. The creation of the order of joint custody by the district court, pursuant to La. Civ.Code art. 132, titled Award of Custody to Parents,[3] established an explicit division of custody based upon the best interest of the children. Given that Christopher Jr., is autistic and requires a structured environment based on his needs, and given that he already has thrived in the structured environment with his father, and further considering that Mr. Kees has managed to take care of both Jaden and Christopher without any assistance from Ms. Anderson-Kees, we find that Ms. Anderson-Kees has failed to establish that the children's best interests will be better served had she been awarded domiciliary custody by the district court, nor has she shown the that the district court abused its discretion in awarding domiciliary custody to Mr. Kees. Hence, we conclude that this assignment of error does not have merit and find that the district court has not abused its discretion.
In her second assignment of error, Ms. Anderson-Kees argues that the district court abused its discretion by ignoring and disregarding the opinion of the court-appointed child custody evaluator, when the evaluator's opinion was the only expert opinion in the record and is based upon "correct" reasoning.
Ms. Parsons, the appointed custody evaluator, opined that Ms. Anderson-Kees should be granted custody of the children because she believed that Mr. Kees would not be able to support his children's relationship with Ms. Anderson-Kees. In particular, she noted:
The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the children and the other parent is a significant and troubling factor in this evaluation. Mr. Kees and [Ms. Anderson-Kees] continued to be in conflict with each other because of their differing expectations and needs as co-parents. [Mrs.] Anderson-Kees feels a need to be informed about and involved in the daily lives of her children, as she should. Because of Mr. Kees [sic] resistance to her attempts to communicate, [Ms. Anderson-Kees] feels (and is) excluded from much of their daily life. Mr. Kees feels overwhelmed by [Ms. Anderson-Kees'] attempts to communicate with him, even feeling her phone calls as harassment. He feels threatened enough by the history of past conflicts that he has kept his address secret from her, and keeps a separate cell *578 phone to receive calls from her. He also continues to be highly suspicious of her motives and contacting him, believing that it is an attempt to reconcile or get further financial help from him, not in the real interest of the boys. The recent discovery of Mr. Kees' address by [Mrs.] Anderson-Kees has, unfortunately, further damaged his trust.
[Ms. Anderson-Kees] must be included in the upbringing of their children. No matter what Mr. Kees' perception of her behavior and motives, past and present, it is not in the best interest of the children for Mr. Kees to continue the current pattern of limiting contact with [Mrs.] Anderson-Kees in order to protect himself. [Ms. Anderson-Kees] is correct in her assessment that this will keep her from having a relationship with her sons. It is not selfish for her wish to do so. The children need it as well.
In McKenzie, supra, we indicated:
After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. It is within the trial court's discretion to substitute common sense and judgment when such a substitution appears warranted upon the record as a whole. Verret v. Verret, 34,982 (La.App. 2 Cir. 5/9/01), 786 So.2d 944. Further, a trial judge may substitute his/her own common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole. Raney v. Wren, 98-0869, 722 So.2d 54 (La.App. 1 Cir. 11/6/98); Goodwin v. Goodwin, 618 So.2d 579, 586 (La.App. 2 Cir.1993).
Id., XXXX-XXXX p. 6, 879 So.2d at 339. It is clear from the record that the district court determined that the current placement of the children was in their best interests and that the crux of the issues between Mr. Kees and Ms. Anderson-Kees concern interpersonal conflicts that exist separate and apart from the co-parenting relationship.
In its determination, the district court not only weighed the evidence presented, it also considered other factors such as the special challenges presented in the co-parenting of a child with special needs. The record reflects that based on this issue alone, the district court was obliged to use a common sense approach to arrive at its decision since it found that none of the factors provided in La. C.C. art 134 weighed more in either party's favor. The custody order rendered by the district court does not serve to abridge any rights of either parent; rather, it serves to protect their parental rights. Considering that there was no order in effect prior to the incident which occurred on May 3, 2005, and further considering that there existed no means whereby Ms. Anderson-Kees could hold Mr. Kees accountable for any alleged acts that he may have undertaken on or prior to that date which may have interfered with her parental and/or custodial rights, the order issued by the district court will serve to prospectively assist Ms. Anderson-Kees in asserting her rights. Hence, we conclude that the district court did not abuse its discretion in determining that the expert custody evaluation did not weigh in either party's favor.
We also affirm the district court's judgment with respect to the change of venue from Orleans Parish to Calcasieu Parish due to Mr. Kees' and the children's relocation to Lake Charles, Louisiana and Ms. Anderson-Kees' relocation to Beaumont, Texas as a result of Hurricane Katrina.

DECREE
The judgment of the district court is affirmed.
AFFIRMED.
McKAY, J., dissents.
*579 McKAY, J., dissenting.
I respectfully dissent from the majority opinion. I would reverse the judgment of the trial court and remand the matter for a hearing based on the best interest of the child. See Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
NOTES
[1] We note that this assignment of error as stated is unclear. However, the Court has gauged, based on Ms. Anderson-Kees' arguments in this assignment of error, that she Mr. Kees does not facilitate close interaction with the children in a way that she would.
[2] La R.S. 9:335, titled Joint custody decree and implementation order, provides:

A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2) (a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
(3) The implementation order shall allocate the legal authority and responsibility of the parents.
B. (1) In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.
(2) The domiciliary parent is the parent with whom the child shall primarily reside, but the other parent shall have physical custody during time periods that assure that the child has frequent and continuing contact with both parents.
(3) The domiciliary parent shall have authority to make all decisions affecting the child unless an implementation order provides otherwise. All major decisions made by the domiciliary parent concerning the child shall be subject to review by the court upon motion of the other parent. It shall be presumed that all major decisions made by the domiciliary parent are in the best interest of the child.
C. If a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the parents the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code.
[3] If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award.

In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.